**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
_____

AMERICAN COUNCIL OF LEARNED SOCIETIES,
    633 Third Avenue, 8th Floor New York, NY 10017,

AMERICAN HISTORICAL ASSOCIATION,
    400 A Street SE Washington, DC 20003,

MODERN LANGUAGE ASSOCIATION,
    85 Broad Street, New York, NY 10004,

                  *Plaintiffs,*

                  v.

MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National Endowment for the Humanities,
    400 7th St SW, Washington, DC 20506,

NATIONAL ENDOWMENT FOR THE HUMANITIES,
    400 7th St SW, Washington, DC 20506,

UNITED STATES DOGE SERVICE,
    736 Jackson Pl NW Washington, DC 20503,

AMY GLEASON, in her official capacity as Acting Administrator of the United States DOGE Service,
    736 Jackson Pl NW Washington, DC 20503,

NATE CAVANAUGH, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration,
    1800 F St NW Washington, DC 20006,

JUSTIN FOX, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration,
    1800 F St NW Washington, DC 20006,

                  *Defendants.*

No. 25 Civ. 3657 (CM)

| | |
|---|---|
| THE AUTHORS GUILD, WILLIAM GOLDSTEIN, ELIZABETH KADETSKY, VALERIE ORLANDO, KATALIN BALOG, BENJAMIN HOLTZMAN, LEE JASPERSE, and NICOLE JENKINS, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> NATIONAL ENDOWMENT FOR THE HUMANITIES; <br><br> MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National Endowment for the Humanities; <br><br> UNITED STATES DOGE SERVICE; <br><br> AMY GLEASON, in her official capacity as Acting Administrator of the United States DOGE Service; <br><br> NATE CAVANAUGH, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration; and, <br><br> JUSTIN FOX, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration, <br><br> *Defendants.* | No. 25 Civ. 3923 (CM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINTS FOR DECLARATORY AND INJUNCTIVE RELIEF**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2652/2699
Email: MaryEllen.Brennan@usdoj.gov
          Rachael.Doud@usdoj.gov

MARY ELLEN BRENNAN
RACHAEL DOUD
 Assistant United States Attorneys
 – Of Counsel –

**TABLE OF CONTENTS**

                                                          **PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

      I.       The Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Claims Concerning Grant Termination ...............................................................................1

      II.      The Court Lacks Subject-Matter Jurisdiction Over, and Plaintiffs Lack Standing to Challenge, Claims Relating to Employment Actions ..........................4

      III.     Plaintiffs Lack Standing as to Any Other Claims Not Challenging the Termination of Their Own Grants ........................................................................5

      IV.     Plaintiffs' Claims Based on an Alleged Failure to Spend Funds Are Unripe..........6

      V.      Plaintiffs' Claims Are Not Reviewable Under the APA .........................................6

      VI.     Plaintiffs Do Not Identify Any Violation of Appropriations Provisions.................8

      VII.    Plaintiffs Do Not State a Claim Under the Impoundment Control Act ...................9

      VIII.   Plaintiffs Do Not Plausibly Allege Separation of Powers or *Ultra Vires* Claims ..................................................................................................9

      IX.     Plaintiffs Do Not State a Claim Under the First Amendment ...............................10

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**                                                        **Page(s)**

*Block v. Community Nutrition Institute*,
    467 U.S. 340 (1984) ............................................................................................................. 9

*Columbus Reg'l Hosp. v. United States*,
    990 F.3d 1330 (Fed. Cir. 2021) ............................................................................................ 3

*Dalton v. Specter*,
    511 U.S. 462 (1994) ............................................................................................................. 4

*Department of Education v. California*,
    145 S. Ct. 966 (2025) ....................................................................................................... 1, 2

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .......................................................................................................... 7, 8

*Hometown Connections v. Noem*,
    Civil Action No. 25-cv-00885-LKG, 2025 WL 1103253 (D. Md. Apr. 14, 2025) ............. 3

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017) ................................................................................................... 2

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ............................................................................................... 4

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ............................................................................................................. 7

*Mantena v. Johnson*,
    809 F.3d 721 (2d Cir. 2015) ................................................................................................. 5

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ............................................................................................................... 6

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998) ........................................................................................................... 10

*NRDC, Inc. v. Wheeler*,
    367 F. Supp. 3d 219 (S.D.N.Y. 2019) ................................................................................. 5

*Pennsylvania Dep't of Pub. Welfare v. United States*,
    48 Fed. Cl. 785 (2001) ......................................................................................................... 3

*Rogers v. United States*,
    14 Cl. Ct. 39 (1987), *aff'd*, 861 F.2d 729 (Fed. Cir. 1988) .................................................. 9

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ........................................................................................................ 10

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ................................................................................................ 6

*San Juan City Coll. v. United States*,
    391 F.3d 1357 (Fed Cir. 2004) .......................................................................................... 3

*Sustainability Institute v. Trump*,
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) .............................................. 2, 3

*Thompson v. Cherokee Nation of Okahoma*,
    334 F.3d 1075 (Fed. Cir. 2003) ......................................................................................... 9

*Train v. New York*,
    420 U.S. 35 (1975) ............................................................................................................ 9

**STATUTES**

20 U.S.C. § 956(c) ...................................................................................................................... 7

28 U.S.C. § 1491(a)(1) ................................................................................................................ 1

Pub. L. 118-42 ............................................................................................................................. 8

Pub. L. 119-4 ............................................................................................................................... 8

**REGULATIONS**

2 C.F.R. § 200.340 ...................................................................................................................... 8

## PRELIMINARY STATEMENT

Plaintiffs' oppositions to Defendants' Motion to Dismiss ("ACLS Opp." and "Authors Guild Opp.") do not alter the conclusion that Plaintiffs' complaints should be dismissed. First, the Court lacks jurisdiction over Plaintiffs' claims because the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over Plaintiffs' grant-termination claims, the Civil Service Reform Act provides the exclusive mechanism to challenge adverse personnel actions, and Plaintiffs' claims are unreviewable under the APA. Plaintiffs cannot artfully plead around these impediments. Second, Plaintiffs lack standing as to certain of their claims, and some of their claims are unripe. Finally, Plaintiffs fail to state claims for violation of any appropriations provisions, the Impoundment Control Act, the separation of powers doctrine, or the First Amendment, or for *ultra vires* actions. Accordingly, the Court should dismiss both complaints.

## ARGUMENT

### I. The Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Claims Concerning Grant Termination

All of the Authors Guild Plaintiffs' claims, and many of the ACLS Plaintiffs' claims, focus on the termination of grants and seek the reinstatement of those grants and continued payment thereunder.[1] As explained in Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Brief" or "Defs' Br."), this Court lacks subject-matter jurisdiction over those claims because the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over such claims, which relate to contracts with the United States. *See* 28 U.S.C. § 1491(a)(1). In *Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam), the Supreme

---

[1] In their Opposition, the Authors Guild Plaintiffs confirm that, although their complaint includes allegations about conduct other than the termination of grants, including the reduction in force of staff and the supposed "dismantling of NEH," *see, e.g.*, Authors Guild Compl. ¶¶ 98, 116-19, they are only challenging grant terminations. Authors Guild Opp. 6-7.

Court held that the Government was likely to succeed in showing that the district court lacked jurisdiction over grant termination claims because the Tucker Act invests the Court of Federal Claims with exclusive jurisdiction over suits based on contracts with the United States. The same reasoning applies here, and Plaintiffs' attempts to distinguish this case are unpersuasive.

First, the Authors Guild Plaintiffs try to avoid the application of the Tucker Act by arguing that the grants at issue are not contracts because the source of their rights is statutes, not the grant agreements; the grants lack consideration; and they seek injunctive relief, not damages.[2] Authors Guild Opp. 3. As Defendants explained in their Brief, however, while the agency's governing statute authorizes the NEH Chairperson to award grants and appropriations statutes allocate funding, it is the grants themselves that allow specific individuals and entities to receive funds. Defs' Br. 7-8. Further, NEH did not provide funds to grant recipients without condition, but instead engaged in an exchange of promises and accordingly received consideration. *Id.* Thus, the grants are contracts. The Supreme Court recognized as much in *Department of Education v. California*. The Fourth Circuit recently reached the same conclusion in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025), in which the court granted the Government's request for a stay of a district court injunction enjoining the Government's termination of grants. As in *California*, the Fourth Circuit held that the Government was "likely to succeed" in showing that the district court lacked subject matter jurisdiction over Plaintiffs' claims because "it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds" and they

---

[2] In their Opposition, the Authors Guild Plaintiffs assert that Defendants failed to respond to certain of Plaintiffs' arguments and any such arguments are therefore "forfeited." Authors Guild Opp. 2; *see also id.* at 1 (asserting that Defendants have conceded that Plaintiffs are likely to succeed on the merits of their case, when in fact Defendants have moved to dismiss their complaint in its entirety). The Authors Guild Plaintiffs are incorrect that Defendants did not argue the identified points, and in any event the Court has an "independent obligation" to confirm it has jurisdiction. *See, e.g.*, *In re Tronox Inc.*, 855 F.3d 84, 95 (2d Cir. 2017).

therefore were required to challenge the termination of their grants in the Court of Federal Claims. *Id.* at *1-2. Meanwhile, the Authors Guild Plaintiffs do not cite any cases that have held that grants such as those at issue in this case are not contracts. *Compare Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) (treating federal grant agreements as contracts); *San Juan City Coll. v. United States*, 391 F.3d 1357, 1360-62 (Fed Cir. 2004) (same); *Pennsylvania Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 790 (2001) (same).

The Authors Guild Plaintiffs also contend that they do not seek specific performance of any grant, but instead "seek to enjoin Defendants from giving effect to" the termination of the grants. Authors Guild Opp. 3. But seeking to enjoin the termination of a contract is seeking to require performance of the contract—*i.e.*, specific performance. And, contrary to their contention, Plaintiffs' requested relief is plainly monetary in nature, as Plaintiffs ask the Court to order Defendants to continue to pay funds pursuant to their grants. *See* Br. 8-9 and cases cited therein.

For their part, the ACLS Plaintiffs argue that the Tucker Act is inapplicable because they have avoided pleading their claims relating to grant terminations as APA claims, instead styling them as constitutional claims. ACLS Opp. 5-7. Similarly, the Authors Guild Plaintiffs, who have styled some, but not all, of their claims as arising under the APA, argue that their non-APA claims cannot be subject to the Tucker Act. Authors Guild Opp. 5-6. But however styled, these claims at base challenge the termination of Plaintiffs' grants—which are contracts—and ask the Court to require NEH to continue performing on those contracts by paying them money. *See Sustainability Institute*, 2025 WL 1587100, at *2 (stating that "it appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act"); *see also Sols. in Hometown Connections v. Noem*, Civil Action No. 25-cv-00885-LKG, 2025 WL 1103253, at *10 (D. Md.

Apr. 14, 2025) (cited at Defs' Br. 8).

Additionally, Plaintiffs' constitutional claims largely flow from their allegations that Defendants have failed to comply with NEH's governing statute and appropriations statutes. Such claims do not suffice to trigger the strong presumption favoring judicial review of constitutional claims. *See Dalton v. Specter*, 511 U.S. 462, 472-74 (1994) (holding that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims subject to" the heightened availability of judicial review for constitutional claims); *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985) (holding that the Contracts Dispute Act governed challenge to contract termination, "despite [plaintiff's] efforts to cast its complaint otherwise," noting "the well-accepted proposition that a plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions rather than breach of contract" and citing cases). As discussed below, moreover, Plaintiffs' constitutional claims suffer from their own infirmities. *See infra* at 9-10.

## II. The Court Lacks Subject-Matter Jurisdiction Over, and Plaintiffs Lack Standing to Challenge, Claims Relating to Employment Actions

As explained in Defendants' Brief, the Court lacks jurisdiction over Plaintiffs' claims concerning personnel actions because Congress has established exclusive statutory schemes for addressing such disputes. Defs' Br. 9-10. Additionally, Plaintiffs, who are not even federal employees, lack standing to challenge a reduction in force applicable to such employees. *Id.* at 12. The ACLS Plaintiffs attempt to avoid these impediments by arguing that the reduction in force will result in "the loss of NEH as a convenor for and promotor of the humanities" and "the loss of NEH in supporting and legitimizing humanities research through a rigorous peer-review process." ACLS Opp. 14. However, the ACLS Plaintiffs do not plausibly allege that NEH has ceased to function, and NEH in fact continues to offer grant opportunities and award grants. *See* Defs' Br.

5; McDonald Decl., Dkt. No. 80, ¶¶ 19-22.[3]

### III. Plaintiffs Lack Standing as to Any Other Claims Not Challenging the Termination of Their Own Grants

In their Opposition, the ACLS Plaintiffs make clear that their claim to standing for conduct beyond the termination of their own grants hinges on the "loss of an opportunity to *compete*" for grants. ACLS Opp. 12. The ACLS Plaintiffs stretch the concept of standing based on a lost opportunity to its breaking point. While they cite cases recognizing that the lost opportunity to apply for a benefit may constitute an injury sufficient to confer standing, *see id.*, those cases make clear that the opportunity and the plaintiff's intent to compete for it must be concrete and imminent. In *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015), for example, the court held that the plaintiff had standing to challenge the sufficiency of the United States Citizenship and Immigration Service's notice of its intent to revoke her work visa petition, which led to the automatic denial of her application for adjustment of status. While the plaintiff's application might have been denied even if she had received the required notice, she lost the concrete and imminent opportunity to secure a green card, which she had been attempting to do for years. *Id.* And in *NRDC, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 232-33 (S.D.N.Y. 2019), the court found that NRDC could not establish standing based on lost professional opportunities. The court noted that "'imminence' requires more than an interest in an undefined benefit or opportunity at some point in the future," and held that NRDC had not made the requisite showing in part because "NRDC's declarations do not identify any particular position or grant or specify any concrete action taken in furtherance of applying." *Id.* at 233. While Plaintiffs identify some specific grant programs to which they assert

---

[3] The ACLS Plaintiffs also argue that the Civil Service Reform Act could not preclude their claims "given recent events" concerning the Merit Systems Protection Board. ACLS Opp. 16. Their challenge to actions concerning the MSPB is far beyond the bounds of this case, particularly given that none of the Plaintiffs are federal employees.

they planned to apply or were in the process of applying, they also rely on generalized assertions about plans to apply for possible future grants. ACLS Opp. 13. They even go so far as to suggest that they have suffered an injury from NEH's decision to provide funding for the Garden of Heroes, on the theory that NEH could otherwise have used those funds to provide other grants to which they might have applied. *Id.* at 14. These alleged injuries are not concrete and particularized or actual or imminent. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). Plaintiffs also do not plausibly allege that NEH would need to retain all of its preexisting programs and divisions to offer the grants to which they would plan to apply. Accordingly, the ACLS Plaintiffs lack standing to seek much of the broad relief they seek.

## IV. Plaintiffs' Claims Based on an Alleged Failure to Spend Funds Are Unripe

Plaintiffs' claims premised on the assertion that NEH will be unwilling or unable to spend the funds appropriated to it are unripe. Defs' Br. 14-15. The ACLS Plaintiffs' response—that the "unlawful deferral is happening *right now*," ACLS Opp. 15, makes no sense, as NEH is not obligated to spend funds on a particular schedule, or award them to particular grantees at any particular time. *See* McDonald Decl., Dkt. No. 80, ¶ 10.

## V. Plaintiffs' Claims Are Not Reviewable Under the APA

Plaintiffs' claims are also unreviewable under the APA. Defs' Br. 15-20. First, the Tucker Act and the statutory scheme for challenging employment actions preclude review of Plaintiffs' claims and provide alternate avenues to challenge the relevant actions. Br. 6-9, 15-16.

Second, because the ACLS Plaintiffs' claims effectively constitute a wholesale challenge to the management of NEH, review is not permitted under the APA. Defs' Br. 16-18. Notwithstanding the ACLS Plaintiffs' assertion that this argument does not apply to litigants seeking review under § 706(2), *see* ACLS Opp. 8 (quoting dicta in *Salazar v. King*, 822 F.3d 61,

82 n.13 (2d Cir. 2016), noting that requirement that agency action be "discrete" applies only to § 706(1)), the Supreme Court has made clear that APA review is unavailable under § 706(2) for broad, programmatic challenges and that a litigant must "direct its attack against some particular 'agency action' that causes it harm," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990). Here, although the ACLS Plaintiffs purport to challenge a series of "discrete agency actions," they in fact ask the Court to review the manner in which the agency has been conducting its operations. *See* ACLS Opp. 8-10. For example, they cast their dissatisfaction with NEH's purported delays or funding reductions as "concrete decision[s]" to stop funding, and they simultaneously challenge NEH's "decision to award funds for the Garden of Heroes." ACLS Opp. 9-10. This amounts to a request for the Court to review what the agency chooses to fund or not fund. The ACLS Plaintiffs additionally seek review of personnel decisions and all recent decisions to eliminate or restructure programs and divisions, under the guise of seeking review of dozens of supposedly discrete actions. That is impermissible under the APA. *See Lujan*, 497 U.S. at 893.

Third, because there is no judicially manageable standard by which to evaluate the challenged actions, those actions are "committed to agency discretion by law" and are therefore unreviewable. *See* Defs' Br. 18-20. Plaintiffs' Oppositions do not point to any reasonable standard of review that a reviewing court could apply. *See* ACLS Opp. 10-12; Authors Guild Opp. 7-8. The ACLS Plaintiffs offer a conclusory argument, without relevant support, that the types of actions they challenge are not "traditionally committed to agency discretion," *see* ACLS Opp. 11, but an agency action need not be "traditionally" committed to agency discretion to trigger § 701(a)(2). *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (explaining that the "agency discretion" exception applies "in different circumstances"). The ACLS Plaintiffs also claim vaguely that the statutory requirements in 20 U.S.C. § 956(c) "inform whether the decisions to end

the programs and divisions are arbitrary and capricious," ACLS Opp. 11-12, but nothing in § 956(c) prohibits NEH from terminating grants or programs, even in cases where such grants or programs are consistent with the statutory directives. *See* Defs' Br. 19-20.

The Authors Guild Plaintiffs, on the other hand, assert that the regulation governing the termination of grants provides metrics against which a court can adjudicate the grant terminations, Authors Guild Opp. 7-8, but that regulation permits an agency to terminate a grant "if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340. An agency's determination as to whether a grant award effectuates its own priorities is clearly discretionary. *See Chaney*, 470 U.S. at 831-32 ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.").

## VI. Plaintiffs Do Not Identify Any Violation of Appropriations Provisions

Plaintiffs' Oppositions fail to plausibly articulate a violation of relevant appropriations laws. As an initial matter, the Authors Guild Plaintiffs inaccurately and inexplicably claim that Defendants "do not dispute" that they adequately alleged that NEH "withheld appropriated funding." Authors Guild Opp. 19. As Defendants have maintained throughout this action, NEH continues to offer grant opportunities and award grants. *See* Defs' Br. 14-15, 22.

Moreover, the Authors Guild Plaintiffs' interpretation of the relevant appropriations provision is flawed. *See* Authors Guild Opp. 19-20. Quoting language from the Appropriations Act—that $192,000,000 "shall be available" for the 2024 fiscal year—the Authors Guild Plaintiffs focus exclusively on the word "shall," but ignore the ramifications of the word "available." *Id.* 19-20; *see* Consolidated Appropriations Act, 2024, Pub. L. 118-42 (Mar. 9, 2024); March 15, 2025, Continuing Resolution, Pub. L. 119-4. The Authors Guild Plaintiffs cite no authority for the proposition that a statement that a sum "shall be available" for a given year equates to a mandate

that the entire sum be expended within that time frame. Further, neither of the cases the Authors Guild Plaintiffs cite in support of their analysis is on point. *See* Authors Guild Opp. 19-20 (citing *Thompson v. Cherokee Nat'n of Oklahoma*, 334 F.3d 1075, 1090 (Fed. Cir. 2003); *Train v. New York*, 420 U.S. 35, 43-44 (1975)). Both cases involved questions of whether caps were required to be imposed on funding or allotments, not whether appropriated funds had to be expended by a date certain. *Thompson*, 334 F.3d at 1090; *Train*, 420 U.S. at 43-44.

### VII. Plaintiffs Do Not State a Claim Under the Impoundment Control Act

Plaintiffs also have not stated a claim under the Impoundment Control Act ("ICA"). Defs Br. 16, 22. As explained in Defendants' Brief, "Congress expressly provided that lawsuits based on the Impoundment Control Act must be brought by the Comptroller General in the United States District Court for the District of Columbia." *Rogers v. United States*, 14 Cl. Ct. 39, 50 (1987), *aff'd*, 861 F.2d 729 (Fed. Cir. 1988); *see* Defs Br. 16. Plaintiffs assert that the ICA does not state explicitly that enforcement by the Comptroller is "exclusive," but the Supreme Court has explained that "when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984). And as discussed *supra* in Part VI, Plaintiffs have not plausibly alleged that Defendants unlawfully withheld or delayed spending appropriated funds. *See* Defs Br. 22.

### VIII. Plaintiffs Do Not Plausibly Allege Separation of Powers or *Ultra Vires* Claims

Plaintiffs also have not plausibly alleged a violation of the separation of powers. *See* Defs Br. 20-21. The ACLS Plaintiffs assert that the thrust of their claim is that Defendants have "abdicated" their constitutional duty to carry out the will of Congress, *see* ACLS Opp. 19-20, while the Authors Guild Plaintiffs allege that Defendants have "usurp[ed]" Congress's lawmaking and

9

spending powers, Authors Guild Opp. 23-24.  As discussed *supra*, as well as in the Defendants' Brief, Defendants are neither neglecting to carry out Congress's will nor usurping Congress's role. The agency is continuing to allocate appropriated funds to carry out the agency's statutory mandates and advance the agency's program goals and priorities, and Congress did not place restrictions on the time period within which those funds must be expended.  For similar reasons, Plaintiffs' *ultra vires* claims also fail.  See Defs Br. 24-25.

### IX. Plaintiffs Do Not State a Claim Under the First Amendment

Plaintiffs have not offered any persuasive response to Defendants' arguments with respect to the First Amendment.  First, Plaintiffs have not cogently articulated specific viewpoints against which Defendants allegedly discriminated.  *See* Defs' Br. 22.  The Authors Guild Plaintiffs assert that identifying a "specific viewpoint at issue is not an element of the claim," Authors Guild Opp. 15, but Plaintiffs' claim that Defendants engaged in viewpoint discrimination is at odds with their claim that the grant terminations were "indiscriminate[]" and "non-individualized." ACLS Compl. ¶ 5; Authors Guild Opp. 7.  Plaintiffs cannot have it both ways.

Second, even if Defendants had canceled grants based on viewpoint considerations, that would not on its own make out a First Amendment violation.  As Defendants explained, the government's decision not to subsidize the exercise of one's First Amendment rights does not infringe the right, and the government may allocate funding according to criteria that "would be impermissible were direct regulation of speech" at stake.  *Rust v. Sullivan*, 500 U.S. 173, 193 (1991); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587-88 (1998); *see* Defs' Br. 22-24. The Authors Guild Plaintiffs fail to convincingly explain why this principle is inapplicable here.

### CONCLUSION

The Court should grant Defendants' motion and dismiss the complaints in both cases.

Dated: New York, New York
       June 20, 2025

                            Respectfully submitted,

                            JAY CLAYTON
                            United States Attorney for
                            the Southern District of New York
                            Attorney for Defendants

                    By:  /s/ Mary Ellen Brennan
                            MARY ELLEN BRENNAN
                            RACHAEL DOUD
                            Assistant United States Attorneys
                            86 Chambers Street, 3rd floor
                            New York, New York 10007
                            Telephone: (212) 637-2652/2699
                            MaryEllen.Brennan@usdoj.gov
                            Rachael.Doud@usdoj.gov