UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD, WILLIAM GOLDSTEIN, ELIZABETH KADETSKY, VALERIE ORLANDO, KATALIN BALOG, BENJAMIN HOLTZMAN, LEE JASPERSE, and NICOLE JENKINS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NATIONAL ENDOWMENT FOR THE HUMANITIES, et al.,<br><br>        Defendants. | Case No. 1:25-cv-03923<br><br>Consolidated with No. 1:25-cv-03657 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING EFFECT
OF *TRUMP V. CASA, INC.***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

SUMMARY OF *TRUMP V. CASA, INC.* IN RELEVANT RESPECTS ....................................... 2

ARGUMENT ....................................................................................................................................... 5

    I.    *CASA* Endorsed District Courts' Ability to Provide Classwide Relief, Including Preliminary Classwide Relief. ............................................................... 6

        A.    *CASA* Endorsed Class Actions as the Appropriate Remedial Tool to Enjoin Unlawful Executive Action Affecting Numerous Individuals ............................................................................................................ 6

        B.    Plaintiffs Here Have Demonstrated Their Entitlement to Preliminary Classwide Relief ............................................................................ 7

    II.   *CASA* Explicitly Distinguished the APA's "Set Aside" Remedy From the Universal Injunctions it Prohibited. .................................................................. 9

CONCLUSION ................................................................................................................................. 11

i

## TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump*,
  145 S.Ct. 1364 (2025) .................................................................................................... 7

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ............................................................................................. 8

*Corner Post, Inc. v. Board of Governors*,
  603 U.S. 799 (2024) ....................................................................................................... 5

*Doe v. Trump*,
  766 F. Supp. 3d 266 (D. Mass. 2025) ............................................................................. 2

*Forest Watch v. United States Forest Serv.*,
  410 F.3d 115 (2d Cir. 2005) ......................................................................................... 10

*Gallagher v. New York State Bd. of Elections*,
  477 F. Supp. 3d 19 (S.D.N.Y. 2020) .............................................................................. 7

*United States v. Texas*,
  599 U.S. 670 (2023) ..................................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................................... 8

*Washington v. Trump*,
  765 F. Supp. 3d 1142 (W.D. Wash. 2025) ..................................................................... 3

**Statutes**

5 U.S.C. § 703 .................................................................................................................. 10

5 U.S.C. § 706 ........................................................................................................... 1, 9, 10

Judiciary Act of 1789 .................................................................................................. 3, 4, 9

**Other Authorities**

Fourteenth Amendment ...................................................................................................... 2

Mila Sohoni, *The Past and Future of Universal Vacatur*,
  133 Yale L.J. 2304 (2024) ............................................................................................ 10

Newberg on Class Actions (4th ed. 2002) .......................................................................... 7

**Rules**

Federal Rule of Procedure 23 ............................................................................................... passim

## INTRODUCTION

In this action, Plaintiffs bring a proposed class action of all individual grantees and subgrantees who had their National Endowment for the Humanities ("NEH") grants arbitrarily and unlawfully terminated *en masse* by Defendants. For all counts, Plaintiffs seek relief on behalf of well-defined classes—grantees whose grants were directly canceled, and subgrantees who received NEH money from institutions whose grants were canceled in the same manner. *See* Amended Complaint, ECF 75,[1] at ¶¶ 135-143 ("Amended Complaint"). Plaintiffs bring claims both under the Administrative Procedure Act ("APA")—through which Congress empowered courts like this one to "set aside" agency action if the court determines the action was arbitrary and capricious or contrary to law, *see* 5 U.S.C. § 706(2)—and under implied rights of action alleging constitutional and statutory violations. Plaintiffs seek only to undo a one-time agency action—the Mass Termination of more than 1400 NEH grants over three days—and they seek to do so on behalf of a cohesive, well-defined group of individuals who meet Federal Rule of Procedure 23's requirements for class certification.

The Supreme Court in *Trump v. CASA, Inc.*, did nothing to limit this Court's ability to provide the complete relief requested on behalf of the proposed classes here. To the contrary, the Court endorsed class actions as the proper means by which to challenge and obtain relief for unlawful executive action on behalf of parties and unnamed non-parties alike. *Trump v. CASA, Inc.*, 2025 WL 1773631 (June 27, 2025) ("*CASA*"). And it expressly left untouched established precedent allowing courts to "set aside" unlawful agency action under the APA, *CASA*, 2025 WL 1773631 at *8 n.10 (noting that its ruling did not "resolve[] the distinct question whether the

---

[1] For all ECF cites in this document, Plaintiffs refer to the docket for the lower-numbered case in this consolidated action, Case Number 25-cv-3657, because that is where Plaintiffs and Defendants have filed the relevant papers.

Administrative Procedure Act authorizes federal courts to vacate federal agency action."). The only issue the Supreme Court decided in *CASA* was that district courts may not issue so-called "universal injunctions," which the Court defined as injunctions that "prohibit enforcement of a law or policy against *anyone*." *CASA*, 2025 WL 1773631 at *9-*10.

Plaintiffs have never sought such relief. Instead, Plaintiffs brought a class action challenging a discrete action by Defendants against a discrete set of individuals who all suffered the same concrete harm as a result; Plaintiffs do not seek to enjoin Defendants' activity with respect to anybody outside of the proposed class, and Plaintiffs can meet the requirements for an injunctive class under Federal Rule of Civil Procedure 23(b)(2). Moreover, and separately, Plaintiffs bring APA claims, and *CASA* distinguished the "universal injunctions" it condemned from the setting aside of agency action under the APA, which is a power Congress explicitly granted to courts. For these reasons, *CASA* is no impediment to granting the requested preliminary relief.

## SUMMARY OF *TRUMP V. CASA, INC.* IN RELEVANT RESPECTS

The underlying merits issue in *CASA* is the legality of an executive order President Trump signed on his first day of office purporting to deny birthright citizenship to certain children of undocumented immigrants who, under longstanding common law principles and understandings of the Fourteenth Amendment, have received that benefit. *CASA*, 2025 WL 1773631 at *4. Several individuals, organizations, and 22 states filed suit to enjoin the enforcement of that executive order. Three district courts held that the order was unlawful. *Id.* In each case, the plaintiffs sued not under the APA (which does not apply to the President) but directly under the Fourteenth Amendment to enjoin future enforcement of the executive order. *See, e.g.*, *Doe v. Trump*, 766 F. Supp. 3d 266, 277 (D. Mass. 2025). In each case, the district court held the executive order to be unlawful. Importantly here, each court enjoined the defendants not just from enforcing the executive order against the named plaintiffs—the injunctions prohibited the

enforcement of the executive order entirely, against anybody. *See, e.g.*, *Washington v. Trump*, 765 F. Supp. 3d 1142, 1154 (W.D. Wash. 2025) ("The Court GRANTS Plaintiffs' motions for a nationwide preliminary injunction and ENJOINS enforcement or implementation of the Order on a nationwide basis." (citations omitted)). In only one of the cases did the plaintiffs seek relief on behalf of a class, but the court in that case never decided whether class treatment was appropriate because the universal injunction it issued protected the proposed class's interests. *Id.* at 1153 & n.9.

After the courts of appeals declined to stay the effect of those injunctions, the Supreme Court reviewed the case. *CASA*, 2025 WL 1773631 at *4. The Court noted that it was not reviewing the constitutionality of the executive orders but instead just the propriety of "universal injunctions," which means an order that "prohibits the Government from enforcing the law against *anyone*, anywhere." *Id.* *4 n.1. The Court held such orders to be improper, because "[a] universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power." *Id.* at *6. Specifically, the Court noted that the only potential source of such equitable power for the cases before it would be the Judiciary Act of 1789, *id.*, and that, at the time of the Founding, "[n]either the universal injunction nor any analogous form of relief was available," *id.* at *6. Instead, courts were understood to have power only to issue judgments binding on *the parties*, nor could a court grant a direct right or a benefit to a non-party.[2] The Court therefore held that, absent a few exceptions (two of which are relevant here and

---

[2] The Court noted that some remedies inherently benefit non-parties, such as an order to abate a nuisance obtained in an action brought by an individual plaintiff against an individual defendant; in order to give that plaintiff "complete relief," the defendant could be forced to comply with an order that would benefit others in the community. *See id.* at *11-*12. But even in that event, the non-party beneficiary could not bring an action to enforce the injunction—that right belonged only to the plaintiff who had obtained the order. *Id.* By contrast, the universal injunctions *CASA* prohibits ostensibly empowered any non-party beneficiary of judicial relief to enforce the prohibition through contempt proceedings. *Id.* at *10-*11 & n.11.

discussed below), universal injunctions prohibiting the executive from enforcing a law or policy against non-parties were an inappropriate form of relief.

Three aspects of the Court's analysis and explicit reservations are directly relevant to this case. *First*, the Court noted that the only question it answered was whether the Judiciary Act of 1789 empowered the kind of universal injunctive relief the *CASA* plaintiffs had sought. *See id.* at *6 & n.4 (noting decision "rests solely" on that statutory ground). Thus, the Court "express[ed] no view" on whether Article III would permit such broad injunctive relief, *id.*; the Court instead focused its analysis on what powers of equity the First Congress in 1789 gave to courts, because that is the only statutory source for the power claimed by the district courts in enjoining the birthright citizenship executive order. *See id.* at *5.

*Second*, the Court held that class actions are an appropriate way to seek relief that plaintiffs had sought through universal injunctions. In conducting its historical analysis, the Court (at the plaintiffs' direction) considered whether universal injunctions are analogous to the "bill of peace" that was used in the Founding era by American courts and England's High Court of Chancery. *See id.* at *9-*10. The Court held that "[t]he analogy does not work," primarily because the bill of peace bound only "a group that was small and cohesive, and … did not resolve a question of legal interpretation for the entire realm." *Id.* at *9 (citation and internal quotation marks omitted). Similarly, the bill of peace bound not just parties but the absent non-parties who benefited from it, *id.* (citing 7A Wright, Federal Practice and Procedure § 1751, at 10), whereas non-parties that might benefit from a universal injunction if granted were not bound by a judgment denying such relief, *id.*

But the Court did point to another, well-accepted procedure in which the "bill of peace lives in modern form"— "the modern class action." *Id.* The Court held that, unlike a universal injunction, a Rule 23 class action is a proper way to obtain relief on behalf of parties who are not

4

before the court, both because the Rule's procedural requirements (*e.g.*, numerosity, commonality, etc.) are "virtually identical" to the requirements for a bill of peace, *id.* (citing Wright & Miller), and because absent class members in a certified class are bound by a judgment (unlike absent beneficiaries of a universal injunction), *id.* at *13 & n.15. Indeed, Justice Kavanaugh, concurring in full but writing separately, could not have been clearer: "[I]n the wake of the Court's decision, plaintiffs who challenge the legality of a new federal statute or executive action and request preliminary injunctive relief may sometimes seek to proceed by class action." *See id.* at *19. So too did Justice Alito (joined by Justice Thomas) recognize in his concurrence that class actions are a valid path to preliminary relief, *id.* at *17-*18, as did the three dissenting justices, *id.* at *43 (Sotomayor, J., dissenting) ("[T]he majority leaves untouched one important tool to provide broad relief to individuals subject to lawless Government conduct: Rule 23(b)(2).").

*Third*, the Court expressly reserved the "distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Id.* at *8 n.10 (citing 5 U.S.C. § 706(2)). In his concurrence, Justice Kavanaugh went farther and explicitly stated APA relief was still available: "[I]n cases under the [APA], plaintiffs may ask a court to preliminarily 'set aside' a new agency rule." *Id.* at *19 (citing, *inter alia*, *Corner Post, Inc. v. Board of Governors*, 603 U.S. 799, 826-43 (2024) (Kavanaugh, J., concurring)).

## ARGUMENT

The Supreme Court's decision in *Trump v. CASA* does not preclude the relief Plaintiffs seek. To the contrary, the Court made clear that class actions are the proper means of seeking relief on behalf of affected non-parties when Rule 23's requirements for injunctive relief are met (as they are here). And the Court expressly reserved the APA question, which provides an alternative method by which Plaintiffs here could obtain the relief they seek. Plaintiffs submit that the former course is the preferable one—both because the *CASA* majority clearly approved

preliminary class relief (rather than reserving the question), and because the Court can grant effective relief for both Plaintiffs' APA and non-APA claims by preliminarily certifying a class.

**I.    *CASA* Endorsed District Courts' Ability to Provide Classwide Relief, Including Preliminary Classwide Relief.**

In ruling that an individual plaintiff could not generally obtain a universal injunction, the Court in *CASA* expressly identified class actions for injunctive relief as an appropriate means of challenging unlawful executive action on behalf of non-parties (*i.e.*, absent class members). That is precisely the kind of action Plaintiffs here have brought—a proposed class action under Federal Rule of Civil Procedure 23(b)(2) seeking an injunction undoing the Mass Termination. *See* Amended Complaint, ¶¶ 135-143 ("Class Allegations"). *CASA* not only does not call into question the availability of such relief—it affirms that Plaintiffs chose the right course in bringing the action in the manner that they did. And because the proposed classes—grantees and subgrantees whose NEH support was summarily canceled by the Mass Termination—were all harmed in the same way by the same unlawful action, the Court can readily provide preliminary relief to the class, as Plaintiffs have noted previously. *See* Plaintiffs Omnibus Reply in Support of Plaintiffs' Motion for Preliminary Injunction and Opposition to Defendants' Motion to Dismiss, ECF 85, at 6. Indeed, Defendants have never challenged the Amended Complaint's class allegations or Plaintiffs' arguments, *id.*, that classwide treatment, even at the preliminary injunction stage, is appropriate. *See generally* Defendants' Reply in Support of Motion to Dismiss, ECF 104.

**A.    *CASA* Endorsed Class Actions as the Appropriate Remedial Tool to Enjoin Unlawful Executive Action Affecting Numerous Individuals.**

In ruling that universal injunctions are improper, the Court held class actions are the more appropriate way to award relief to non-parties, both because they are analogous to the historical "bill of peace," *CASA*, 2025 WL 1773631, at \*11-\*13, and because they offer the government the opportunity to bind non-parties (*i.e.*, absent class members) to a judgment against them, *id.* at \*13

6

n.15 (distinguishing universal injunctions from class actions because "[a] judgment in a Rule 23 class action (favorable or not) binds the whole class—so if the defendant wins, it is protected from future suits").

Here, Plaintiffs have at all times made clear that they are seeking relief on behalf of a clear-cut class of persons: individuals whose grants (or whose institution's grants) were canceled by the Mass Termination. *See, e.g.*, Amended Complaint, ¶¶ 135-143 & "Prayer for Relief."

### B. Plaintiffs Here Have Demonstrated Their Entitlement to Preliminary Classwide Relief

To date, Defendants have not argued that, should the Court believe Plaintiffs are righton the merits, the Court should nonetheless limit any relief it grants to the named Plaintiffs and (in Plaintiff Authors Guild's case) their members instead of granting relief to the entire class. This is with good reason: It is well-established that the Court may grant preliminary injunctive relief on behalf of a proposed class, as the Supreme Court did less than two months ago. *See A.A.R.P. v. Trump*, 145 S.Ct. 1364 (2025) (granting preliminary classwide relief to habeas petitioners); *Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 39 (S.D.N.Y. 2020) ("[T]he Court need not formally certify a class in order to issue the requested preliminary relief." (citation omitted)); Newberg on Class Actions § 24:83 (4th ed. 2002) ("The absence of formal certification is no barrier to classwide preliminary injunctive relief."). But if Defendants now change course and argue that preliminary classwide relief is improper, Plaintiffs here briefly explain why preliminary certification is appropriate under the requirements of Federal Rule of Procedure 23:

*Numerosity.* Under the numerosity requirement, a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In general, courts have held this requirement presumed to be met when the proposed class contains more than 40 members. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

7

The Complaint alleges that more than 1,400 individuals' grants were canceled by the Mass Termination, Amended Complaint ¶ 1, most of whom will be in either of the proposed classes, *id.* ¶¶ 135-143.

*Commonality.* The next requirement is that plaintiffs show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That requirement is met when plaintiffs "suffered the same injury" and where resolving the named plaintiffs' legal claims will "generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citations omitted). Plaintiffs' claims all relate to the Mass Termination— which was effectuated by Defendants sending the same letter to all class members and/or their institutions during the same three-day period. Amended Complaint ¶¶ 96-115. Thus, common questions include (but are not limited to): whether the Mass Termination violated the Administrative Procedure Act; whether Defendants acted arbitrarily and capriciously; whether Defendants acted unlawfully; whether the Mass Termination violated the First Amendment; whether the Proposed Classes should be certified; and whether Plaintiffs and members of the classes are entitled to injunctive relief. *See id.* ¶ 140.

*Typicality.* The named parties' claims and defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, the named Plaintiffs were injured in precisely the same way as the proposed class members—their grants were canceled by the Mass Termination. Given the form nature of the Mass Termination letters, there is no indication that any individualized claims or defenses exist in this litigation.

*Adequacy.* The named plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, neither Plaintiffs nor their counsel have any known conflict that would prevent them from adequately protecting the classes' interests, and every incentive to do so. The relief provided to the named Plaintiffs is precisely the relief that would make the absent

class members whole: the enjoining of the Mass Termination that caused all of them the same harm.

***Classwide injunctive relief appropriate.***  Finally, for an injunctive class (as opposed to a damages class), plaintiffs need to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  For much the same reason as the above factors, that standard is also met:  Defendants acted against all members of the proposed class in the same manner (by terminating their grants via the Mass Termination), and enjoining that agency action would appropriately grant relief to the entire class.

## II. *CASA* Explicitly Distinguished the APA's "Set Aside" Remedy From the Universal Injunctions it Prohibited.

Aside from its endorsement of granting classwide relief in class actions just like that which Plaintiffs bring here, the Supreme Court's decision in *CASA* does not call into question the longstanding authority courts have under the APA to "set aside" unlawful agency actions, 5 U.S.C. § 706(2), even if doing so would benefit non-parties.  Instead, the Court affirmatively stated it was not addressing that question.  *See CASA*, 2025 WL 1773631 at *8 n.10.  Two of Plaintiffs' five claims seek precisely this relief, Amended Complaint ¶¶ 144-162 (Counts I & II), and the Court's ability to provide complete relief by setting aside Defendants' unlawful actions under the APA remains untouched.

Unlike universal injunctions, which the Court held in *CASA* have no basis in the jurisdictional authority Congress gave to federal courts under the Judiciary Act of 1789, Congress did provide courts in the APA the authority to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also id.* § 703 (empowering courts to hear administrative actions for "declaratory

9

judgments or writs of prohibitory or mandatory injunction"). In administrative law parlance, this authority is often called "vacatur"—if a party challenges an administrative action under the APA, and the court finds it unlawful, the standard remedy is to vacate the action, even if doing so benefits non-parties. *See generally* Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L.J. 2304 (2024) (defending "universal vacatur," and distinguishing it from non-APA universal injunctions). This has been standard practice in the Supreme Court and lower courts for "decades," *id.* at 2323, including in the Second Circuit, *e.g.*, *Forest Watch v. United States Forest Serv.*, 410 F.3d 115 (2d Cir. 2005) (vacating unlawful agency action).

To be clear, a minority of the Supreme Court has expressed skepticism of this position. *See United States v. Texas*, 599 U.S. 670, 693-703 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment). But even they recognize that there are "arguments on the other side of the ledger," and that "[f]or more than 30 years" vacatur has been the "ordinary result" when a court finds agency action unlawful. *Id.* at 699, 701 (citation and internal quotation marks omitted). And until the Supreme Court has ruled otherwise, this Court is bound to follow that Court's and the Second Circuit's settled precedents, both of which condone vacatur of unlawful agency action under the APA.

Finally, vacatur is particularly appropriate here because, unlike invalidating a regulation by which regulated entities shape their ongoing conduct, the Mass Termination—far from being a duly considered, nationwide policy—was issued on a whim and was a one-time-only agency action. There is thus no fear that awarding relief to these grantees under the APA will stymie executive policy or frustrate a regulatory regime—it would simply undo an arbitrary action that directly harmed the people on whose behalf this suit was brought. Whatever its limits, the APA provides courts at least the modest ability to address such irrational, punitive government conduct.

## CONCLUSION

Plaintiffs respectfully request that this Court issue a preliminary injunction.

Respectfully submitted,

By: /s/ Jamie Crooks
Jamie Crooks (*pro hac vice*)
Michael Lieberman (*pro hac vice*)
Amanda R. Vaughn (*pro hac vice*)
Yinka Onayemi
FAIRMARK PARTNERS, LLP
400 7th Street, NW, Suite 304
Washington, DC 20004
Tel: 619.507.4182
jamie@fairmarklaw.com
michael@fairmarklaw.com
amanda@fairmarklaw.com
yinka@fairmarklaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

Dated: July 2, 2025

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1**

I hereby certify that this Supplemental Brief complies with Local Civil Rule 7.1  The word count of the Brief is 3,406. Per the rule, this count does not include the caption, table of contents, table of authorities, signature block, or this certification.

Signed this 2nd day of July, 2025.

/s/ *Jamie Crooks*
Jamie Crooks
