**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN COUNCIL OF LEARNED SOCIETIES,<br>    633 Third Avenue, 8th Floor New York, NY 10017,<br><br>AMERICAN HISTORICAL ASSOCIATION,<br>    400 A Street SE Washington, DC 20003,<br><br>MODERN LANGUAGE ASSOCIATION,<br>    85 Broad Street, New York, NY 10004,<br><br>                        *Plaintiffs,*<br><br>                v.<br><br>MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National Endowment for the Humanities,<br>    400 7th St SW, Washington, DC 20506,<br><br>NATIONAL ENDOWMENT FOR THE HUMANITIES,<br>    400 7th St SW, Washington, DC 20506,<br><br>UNITED STATES DOGE SERVICE,<br>    736 Jackson Pl NW Washington, DC 20503,<br><br>AMY GLEASON, in her official capacity as Acting Administrator of the United States DOGE Service,<br>    736 Jackson Pl NW Washington, DC 20503,<br><br>NATE CAVANAUGH, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration,<br>    1800 F St NW Washington, DC 20006,<br><br>JUSTIN FOX, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration,<br>    1800 F St NW Washington, DC 20006,<br><br>                        *Defendants*. | No. 25 Civ. 3657 (CM) |

| | |
|---|---|
| THE AUTHORS GUILD, WILLIAM GOLDSTEIN, ELIZABETH KADETSKY, VALERIE ORLANDO, KATALIN BALOG, BENJAMIN HOLTZMAN, LEE JASPERSE, and NICOLE JENKINS, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> NATIONAL ENDOWMENT FOR THE HUMANITIES; <br><br> MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National Endowment for the Humanities; <br><br> UNITED STATES DOGE SERVICE; <br><br> AMY GLEASON, in her official capacity as Acting Administrator of the United States DOGE Service; <br><br> NATE CAVANAUGH, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration; and, <br><br> JUSTIN FOX, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration, <br><br> *Defendants.* | No. 25 Civ. 3923 (CM) |

## SUPPLEMENTAL MEMORANDUM OF LAW

>JAY CLAYTON
>United States Attorney for the
>Southern District of New York
>86 Chambers Street, 3rd Floor
>New York, New York 10007
>Tel.: (212) 637-2652 / 2699
>Email: maryellen.brennan@usdoj.gov
>          rachael.doud@usdoj.gov

MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
 – Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

I.  THE AUTHORS GUILD PLAINTIFFS' REQUEST FOR PRELIMINARY CLASS CERTIFICATION SHOULD BE DENIED ................................................................................... 1

    A.  Legal Standards .................................................................................................... 2

    B.  The Proposed Classes Do Not Meet Rule 23(a)(2)'s Commonality Requirement .. 3

    C.  The Proposed Classes Do Not Meet Rule 23(a)(2)'s Typicality Requirement ........ 7

    D.  Certification Is Not Proper Under Rule 23(b)(2) .................................................. 8

II. THE ACLS PLAINTIFFS' ARGUMENTS CONCERNING MICHAEL MCDONALD'S DECLARATION IN THAKUR ARE UNAVAILING ....................................................... 9

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................. 2

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ................................................................................................. 2

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................... 2

*Doe v. L.A. Unified Sch. Dist.*,
    16-cv-00305-CAS (JEMx), 2017 WL 797152 (C.D. Cal. Feb. 27, 2017) ...................... 10

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................. 7, 8

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ..................................................................................... 3

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016) .................................................................................. 7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 23 ..................................................................................................... 2, 3, 7, 8

Defendants respectfully submit this memorandum of law in response to the Court's July 9, 2025 order, providing Defendants time to respond "to (i) the arguments in Authors Guild's July 2, 2025 Supplemental Brief about why a class should be preliminarily certified and (ii) the information in ACLS's July 7, 2025 submission." Dkt. No. 113.[1]

## I. THE AUTHORS GUILD PLAINTIFFS' REQUEST FOR PRELIMINARY CLASS CERTIFICATION SHOULD BE DENIED

Plaintiffs in *The Authors Guild v. National Endowment for the Humanities* (the "Authors Guild Plaintiffs") seek certification of two proposed classes: (1) the "Individual Grantee Class," comprised of "[a]ll individual NEH grant recipients whose grants were terminated as part of the Mass Termination"; and (2) the "Subrecipient Class," comprised of "[a]ll NEH grant subrecipients whose sponsors' grants were terminated as part of the Mass Termination" (the "Proposed Classes"). Authors Guild Amended Complaint, ECF No. 75 ("Authors Guild Compl.") ¶ 135. "Mass Termination," as defined by the Authors Guild Plaintiffs, refers to the grant terminations by NEH that were "implemented through Termination Notices issued on April 1st through April 5th, 2025." *Id.* ¶ 136. "Subrecipient," as defined by the Authors Guild Plaintiffs, refers to an individual or organization for whom a sponsoring organization sponsored a grant. *Id.* ¶ 137.

The Authors Guild Plaintiffs have not filed a motion for class certification, but after the Court ordered the parties to address the impact of the Supreme Court's decision in *Trump v. Casa*, the Authors Guild Plaintiffs submitted a brief arguing that "preliminary certification" of the Proposed Classes is appropriate. *See* Authors Guild Plaintiffs' Supplemental Brief Regarding Effect of *Trump v. CASA, Inc.*, Dkt. No. 107 ("Authors Guild *CASA* Br.") 7-9.

The Court should decline to preliminarily certify the Proposed Classes.

---

[1] Unless otherwise indicated, docket numbers cited are those in Case No. 25-cv-03657 (CM).

**A. Legal Standards**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The party seeking class certification bears the burden of demonstrating that they have satisfied all four Rule 23(a) prerequisites and that his proposed class lawsuit falls within one of the three types of actions permitted under Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading standard" and thus a plaintiff "must affirmatively demonstrate [his] compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Consequently, the Court must conduct a "rigorous" class certification analysis, which may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. If the Court is not fully satisfied that all Rule 23 requirements are met, the Court cannot certify the class. *Id.*

Rule 23(a) requires a party seeking to certify a class first to demonstrate that:

(1) The class is so numerous that joinder is impractical [("numerosity")];
(2) There are questions of law or fact common to the class [("commonality")];
(3) The claims or defenses of the named plaintiffs are typical of claims or defenses of the class [("typicality")]; and
(4) The named plaintiffs will fairly and adequately protect the interest of the class [("adequacy of representation")].

Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345. The Authors Guild Plaintiffs seek certification under Rule 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

2

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see* Authors Guild *CASA* Br. 9. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (quotation marks omitted).

### B. The Proposed Classes Do Not Meet Rule 23(a)(2)'s Commonality Requirement

"A question of law or fact is common to the class, if the question is 'capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 349-50) (cleaned up). Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," but this "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350. Indeed, it is not enough for a plaintiff to identify broad questions that are common to the entire class. *See id.* at 350 ("What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." (quotations omitted) (emphasis in original)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson*, 780 F.3d at 137.

The Authors Guild Plaintiffs have not demonstrated that the Proposed Classes meet the commonality requirement. In particular, they have not shown that the grant terminations that the Authors Guild Plaintiffs challenge give rise to "the same kind of claims from all class members." *Id.* They broadly assert that the common questions of law and fact in this case are "whether the Mass Termination violated the Administrative Procedure Act; whether Defendants acted

3

arbitrarily and capriciously; whether Defendants acted unlawfully; whether the Mass Termination violated the First Amendment; whether the Proposed Classes should be certified; and whether Plaintiffs and members of the classes are entitled to injunctive relief." Authors Guild *CASA* Br. 9.  But generalized questions like whether Defendants "acted unlawfully" and violated certain laws, *see id.*, are not sufficient to obtain class certification, *see Wal-Mart*, 564 U.S. at 350, 374 (explaining that "[r]eciting . . . questions" including (1) whether all "plaintiffs indeed work for Wal-Mart," (2) whether all plaintiffs' "managers have discretion over pay," (3) whether something "is an unlawful employment practice," and (4) what remedies the plaintiffs should get would not be sufficient to obtain class certification).  As the Supreme Court has explained, the commonality requirement "does not mean merely that [the proposed class members] have all suffered a violation of the same provision of law." *Id.*

Here, in the event the Court denies Defendants' motion to dismiss, questions of whether particular grant terminations violated the APA, the First Amendment, or any other law, as well as whether the relevant grant recipients are entitled to injunctive relief, require analysis of the individual grants, the determinations made by the government for each such grant, and the impact of grant terminations on individual grantees.[2]  The Authors Guild Plaintiffs' various arguments challenging the grant terminations reflect this necessity for individualized determinations.  Although they contend, on one hand, that grant terminations were "completely untethered from any consideration of each grant's merits," "ignored . . . evidence," and lacked

---

[2] For the reasons stated in Defendants' memorandum of law in support of their motion to dismiss and in Defendants' memorandum of law in opposition to Plaintiffs' motions for preliminary injunctions, the Court lacks jurisdiction to review Plaintiffs' grant termination claims, Plaintiffs have not stated any cognizable First Amendment claim based on the grant terminations, and Plaintiffs cannot demonstrate that they suffered irreparable harm as a result of the grant terminations.  See Defs' MTD Br., Dkt. No. 77; Defs' PI Opp. Br., Dkt. No. 81.

"individualized analysis," they also argue that some of the terminations violated the First Amendment because "Defendants withdrew funding from projects they believed promoted or were associated with viewpoints they disfavor." Authors Guild Memorandum of Law in Support of PI Motion ("Authors Guild PI Br."), Dkt. No. 65-1, at 15-20; *see also* Authors Guild Omnibus Reply Br., Dkt. No. 85, at 16. In advancing their First Amendment claims, they assert that grant terminations were motivated by "root[ing] out" viewpoints including "K-12 education, gender ideology, and DEI," and also that some, but not all, grants were terminated "based on association with [the Biden] administration." *See* Authors Guild PI Br. 17-21 (arguing that Defendants terminated "*almost* every grant issued during the Biden administration" (emphasis added)); *see also* Authors Guild Omnibus Reply Br. 16-17.

The Authors Guild Plaintiffs do not claim that every grant implicated by the Mass Termination was terminated because it related to "K-12 education," "gender ideology," or "DEI," or that every grant was terminated because of its association with the Biden administration. *See* Authors Guild PI Br. 17-21. Thus, if the Court were to decide that any of the Authors Guild Plaintiffs' First Amendment claims should survive dismissal, the Court would need to consider whether particular grant termination decisions were made on the basis of "viewpoint-based criteria for terminating grants." Authors Guild Omnibus Reply Br. 16. The Court may reach different conclusions as to different grants, depending on the subject matter of each grant and the bases for each grant's termination. Moreover, the Court may reach distinct conclusions as to what laws, if any, a grant termination violated, if the Court were to determine that a grant termination was made for the sake of efficiency and cost-savings, without any individualized consideration of the subject matter of the particular grant, versus whether a termination was motivated by viewpoint-based criteria. *See Wal-Mart*, 564 U.S. at 350 ("[T]he mere claim by

5

employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.").

Similarly, with respect to the proposed "common" question of whether Plaintiffs and members of the classes are entitled to injunctive relief, an analysis of whether a member of a putative class would suffer irreparable harm, absent such relief, also requires such individualized considerations. The Authors Guild Plaintiffs hinge their contention that they will face irreparable harm, absent an injunction, on claims that the deprivation of the terminated grants threatens their "careers and livelihoods," the "continued viability of [their] professional standing," and their "professional survival and advancement." Authors Guild PI Br. 22-23; *see also* Authors Guild Omnibus Reply Br. 9 (arguing that grant terminations are "eliminating opportunities for publication"). The extent to which a single grant termination would impact a grant recipient's career, livelihood, and opportunities for publication necessarily depends on the circumstances of the particular grantee. Moreover, the Authors Guild Plaintiffs assert that the terminated grants prompted grantees to rearrange their lives based on the grants and that the grant terminations have the potential to "disrupt[] families." Authors Guild PI Br. 23; Authors Guild Omnibus Reply Br. 9. The Authors Guild Plaintiffs cannot demonstrate, however, that every grant held by every purported class member "was so essential to [the grantee's] professional endeavors that [they] structured their lives around [the grants], forgoing other jobs, taking leaves of absence, committing to months of grant-supported full-time research, and arranging travel for time-sensitive interviews and archival research." Authors Guild PI Br. 23; Authors Guild Omnibus Reply Br. 9. The Authors Guild Plaintiffs appear to acknowledge that not all class members

6

necessarily would suffer the same harms, arguing, for instance, that "[f]or many"—not for all—grant recipients, the grant terms "expressly required them to turn down all other work." Authors Guild PI Br. 23.

The Authors Guild Plaintiffs thus have not demonstrated that any purported common questions will "generate common answers apt to drive resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (cleaned up).

### C. The Proposed Classes Do Not Meet Rule 23(a)(2)'s Typicality Requirement

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate by effectively limiting the class claims to those fairly encompassed by the named plaintiff's claims." *Mazzei v. Money Store*, 829 F.3d 260, 271-72 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1332 (2017) (alterations, citation, and internal quotation marks omitted). Typicality requires that "the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Id.* at 272 (internal quotation marks and alterations omitted). The typicality requirement aims "to ensure that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (internal quotation marks and alterations omitted).

For much the same reasons discussed in Part I.B, the Proposed Classes do not meet the typicality requirement. The Supreme Court has explained that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). Both requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their

7

absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *General Telephone*, 457 U.S. at 157-58 n.13). Here, as discussed in Part I.B, the particular arguments that might be advanced by the Authors Guild Plaintiffs—with respect to their grants, the reasons (or purported absence of reasons) for the grant terminations, the laws purportedly violated by those terminations, and the harm that the terminations might inflict on them absent an injunction—are not so interrelated that the interests of the class members will be fairly and adequately protected in each class member's absence. For example, certain First Amendment arguments may not occupy "essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *See Mazzei*, 829 F.3d at 272.

### D. Certification Is Not Proper Under Rule 23(b)(2)

Certification also is improper because the Authors Guild Plaintiffs cannot show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(2), the Authors Guild Plaintiffs must show that the challenged conduct is such that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

The Authors Guild Plaintiffs cannot show that Defendants have "acted or refused to act on grounds that apply generally to the class," where the Proposed Classes purportedly cover approximately 1,500 individual grants, and various grants were terminated for different reasons. *See* Authors Guild PI Br. 1 (claiming that the Authors Guild Plaintiffs' lawsuit "involves about 1,500" NEH grants); Declaration of Michael McDonald, June 5, 2025, Dkt. No. 80 ("McDonald June 5 Declaration") ¶ 18; Declaration of Michael McDonald, June 17, 2025, *Thakur v. Trump*, No. 25-cv-04737 (RFL) (N.D. Cal. June 19, 2025), Dkt. No. 48-3 ("McDonald *Thakur* Declaration") ¶¶ 6-10, 13-19. Moreover, the factual distinctions necessarily inherent to the

irreparable harm analysis render it impossible to determine entitlement to relief on a classwide basis. *See supra* Part I.B. With the factual and legal variations within the Proposed Classes, classwide relief would be inappropriate. *Wal-Mart*, 564 U.S. at 360. Accordingly, the Court should deny the Authors Guild Plaintiffs' request for preliminary class certification.

## II. THE ACLS PLAINTIFFS' ARGUMENTS CONCERNING MICHAEL MCDONALD'S DECLARATION IN *THAKUR* ARE UNAVAILING

On July 7, 2025, the Court issued an order concerning *Thakur v. Trump*, No. 25-cv-4737 (RFL) (N.D. Cal.), a case involving NEH, among other agencies. Dkt. No. 109. The Court ordered the parties to show cause why the Court should not "import the factual record submitted" to the court in that case, including a declaration from NEH Chairman Michael McDonald ("McDonald *Thakur* Declaration"), "and deem it part of the record in our cases." *Id.* In response to the Court's straightforward order, the Plaintiffs in *American Council of Learned Societies v. McDonald* (the "ACLS Plaintiffs") submitted not only a brief that reasserted certain arguments the ACLS Plaintiffs made in moving for a preliminary injunction, but also an anonymous "John Doe" Declaration that provides additional purported details about NEH's grant termination process and argues that the timeline presented in the McDonald *Thakur* Declaration is "incomplete and potentially misleading." *See* ACLS Plaintiffs' Response to Court's Order Regarding *Thakur v. Trump*, Dkt. No. 110 ("ACLS *Thakur* Response"); Supplemental Declaration of John Doe, dated July 8, 2025, ECF No. 110-1. These submissions do not alter the conclusion that the Court should dismiss Plaintiffs' complaints and deny their motions for preliminary injunctions.

The ACLS Plaintiffs rely on the anonymous Doe Declaration to contend that the "timeline [the McDonald *Thakur* Declaration] presents of how awards were chosen for termination is incomplete and potentially misleading," because, according to the Doe

9

Declaration, it was Defendant Justin Fox, and not NEH Chairman Michael McDonald, who "chose the grants to terminate" and ultimately sent the termination notices. ACLS *Thakur* Response 2-3. The Government is not aware of any inaccurate statements in either the McDonald *Thakur* Declaration or the McDonald June 5 Declaration, Dkt. No. 80. Further, it is difficult to evaluate the content or the credibility of the statements in the Doe Declaration, given the declarant's anonymity and, thus, the uncertain basis for their assertions. *See generally Doe v. L.A. Unified Sch. Dist.*, 16-cv-00305-CAS (JEMx), 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017) (noting that "[a]bsent extraordinary circumstances, witnesses do not testify anonymously under our system of laws"). In any event, however, the Government has not disputed that government employees associated with the Department of Government Efficiency ("DOGE"), including Justin Fox, consulted with McDonald and NEH on terminating grants. *See* McDonald June 5, 2025 Declaration ¶ 13 (explaining that grants were terminated "in consultation with the Department of Government Efficiency"); McDonald *Thakur* Declaration ¶¶ 17-18 (explaining that McDonald sent results of NEH's grant review to Fox, and that grants were terminated "in consultation with DOGE"). Further, the Government did not argue in either its motion to dismiss or opposition to Plaintiffs' motions for preliminary injunctions that any of Plaintiffs' claims should be dismissed for reasons relating to the level of any agency DOGE team representative's alleged involvement in grant terminations. *See* Defs' MTD Br., Dkt. No. 77, and Defs' PI Opp. Br., Dkt. No. 81. Accordingly, the ACLS Plaintiffs' argument concerning the supposedly "potentially misleading" timeline discussed in the McDonald *Thakur* Declaration is irrelevant and immaterial to the issues currently before the Court.

Further, ACLS's supplemental submissions do not alter the conclusion that Plaintiffs' First Amendment claims should be dismissed, and Plaintiffs should not in any event be awarded

preliminary injunctions relating to those claims. As the Government explained in its memorandum of law in support of its motion to dismiss, Plaintiffs' vague allegations that Defendants "terminated . . . grants based on viewpoint" while "leaving in place existing and future grants that align with particular political and ideological viewpoints," ACLS Compl. ¶ 176, do not suffice to state a First Amendment claim, Defs. MTD Br. 22-23. These allegations do not suffice in part because Plaintiffs did not identify any particular viewpoints that allegedly prompted Defendants to terminate their grants, and in fact suggested that Defendants *broadly and indiscriminately* terminated all, or nearly all, grants "awarded during the prior administration." *See* ACLS Compl. ¶ 1; Defs. MTD Br. at 22-23. To the extent that Plaintiffs contend the McDonald *Thakur* Declaration reflects that grants were chosen for termination based on particular viewpoints, that assertion is also at odds with their claim that DOGE purportedly ignored McDonald and NEH staff's analysis of which grants violated Executive Orders and terminated the majority of open grants "indiscriminately." ACLS Compl. ¶ 5; *see* ACLS *Thakur* Response at 2-3. In sum, the ACLS Plaintiffs' supplemental submissions, including their reliance on an anonymous declarant, do not save their claims, which should be dismissed on a number of grounds explained in Defendants' prior papers.

## CONCLUSION

As discussed in Defendants' previously submitted briefs, the Court should grant Defendants' motion to dismiss and deny Plaintiffs' motions for preliminary injunctions. If the Court does grant Plaintiffs relief, the Court should not certify a class and should instead tailor any injunctive or declaratory relief to the termination of the grants previously awarded to the named Plaintiffs.

Dated: New York, New York
July 14, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for
the Southern District of New York
Attorney for Defendants

By: /s/ Mary Ellen Brennan
MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
86 Chambers Street, 3rd floor
New York, New York 10007
Telephone: (212) 637-2652
MaryEllen.Brennan@usdoj.gov