**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE AUTHORS GUILD, WILLIAM GOLDSTEIN, ELIZABETH KADETSKY, VALERIE ORLANDO, KATALIN BALOG, BENJAMIN HOLTZMAN, LEE JASPERSE, and NICOLE JENKINS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ENDOWMENT FOR THE HUMANITIES, et al.,<br><br>Defendants. | Case No. 1:25-cv-03923 |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF MATERIAL WITHHELD UNDER IMPROPER PRIVILEGE CLAIMS**

Plaintiffs The Authors Guild, William Goldstein, Elizabeth Kadetsky, Valerie Orlando, Katalin Balog, Benjamin Holtzman, Lee Jasperse, and Nicole Jenkins (collectively, "Plaintiffs") hereby request an order compelling Defendants to immediately produce material currently being withheld under improper claims of attorney-client privilege and deliberative process privilege.[1] Because these documents relate directly to key witnesses scheduled to be deposed between this Friday (January 23) and next Friday (January 30), Plaintiffs ask that Defendants be required to respond to this motion within 24 hours of its filing and respectfully request that the Court issue a ruling so that Defendants are required to produce the challenged records at a time that they can still be used in Friday's deposition. As outlined in Plaintiffs' Proposed Order, Plaintiffs believe production by 1 p.m. on Friday will be sufficient.[2]

Plaintiffs have pursued discovery in this case with diligence and urgency since the parties' initial conference with the Court. To that end, Plaintiffs served their first discovery requests on September 29, 2025, and contemporaneously noticed the depositions of Defendants Nate Cavanaugh, Justin Fox, Michael McDonald, and Adam Wolfson for January 2026. After several attempts by the Government to avoid meaningfully responding to Plaintiffs' discovery requests, as outlined in Plaintiffs' December 9, 2025, Motion to Compel, ECF Nos. 157, 158, the Court ordered Defendants to produce documents responsive to Plaintiffs' requests by January 16, 2026, ECF Nos. 168, 169.

---

[1] Undersigned counsel for the Authors Guild Plaintiffs has conferred with counsel for the ACLS Plaintiffs, who join this motion in full.

[2] Plaintiffs recognize that there are many documents at issue in this motion. Accordingly, Plaintiffs alternatively seek an order allowing Plaintiffs to reopen the depositions of Cavanaugh, Fox, Wolfson, and McDonald at a later date to address any documents that have improperly been withheld and that require *in camera* review before the Court can make a determination or otherwise cannot be addressed fully before Friday.

Defendants produced 3,691 documents on the evening of January 16, 2026. On that same evening, Defendants informed Plaintiffs that they would withhold or redact approximately 400 documents based on various privilege claims. Much of the withheld material includes email communications including the four deponents scheduled to be deposed between this Friday (January 23) and next Friday (January 30) and appear to directly implicate the process for terminating grants and the Government's discriminatory intent in doing so. Defendants thus appear to be trying to force Plaintiffs to either delay the depositions to litigate Defendants' improper efforts to withhold responsive documents and obscure their unconstitutional conduct, or to proceed with depositions on a record that is incomplete and distorted by invalid privilege claims. Plaintiffs' ability to proceed toward final relief on behalf of the Proposed Class should not be delayed yet again. Accordingly, Plaintiffs request that the Court order Defendants to produce the improperly withheld documents outlined below and in the attached proposed order within 24 hours so that those materials are available for use at the scheduled depositions.

## I. BACKGROUND

On January 16, 2026, Defendants produced approximately 3,691 documents to Plaintiffs, their first production of records in response to Plaintiffs' September 29, 2025, discovery requests. Of these, Defendants entirely withheld approximately 210 documents and redacted more than approximately 190 others, claiming attorney-client privilege, attorney work product, and/or deliberative process privilege. Defendants produced a privilege log with the production, attached as Exhibit 1.

On January 18, 2026, Plaintiffs requested to meet and confer and notified Defendants that, based on their initial review of Defendants' privilege log, Plaintiffs believed many of the assertions of privilege were improper. Specifically, Plaintiffs informed Defendants that it appeared

Defendants had improperly claimed attorney-client privilege over (1) emails between lawyers for one agency, the U.S. DOGE Service (USDS), and non-attorney employees at a different agency, the General Service Administration (GSA), with whom no confidential attorney-client relationship existed; and (2) emails for which Defendants did not identify the involvement of *any* participating attorney rendering legal advice. In addition, Plaintiffs notified Defendants that any invocation of the deliberative process privilege in this case was improper because Plaintiffs' First Amendment claims put Defendants' intent and decision-making process at issue, making the substance of their deliberations directly relevant and necessary for resolving that claim. Plaintiffs also noted to Defendants the urgency given the upcoming depositions and the likelihood that Plaintiffs would move to compel by mid-week.

Defendants responded the same day and informed Plaintiffs that the earliest they could meet and confer about Plaintiffs' challenges was January 20, 2026. Accordingly, the parties met and conferred on January 20. During the meet-and-confer and in email correspondence afterward, Plaintiffs again reiterated that they would likely need to request relief from the Court immediately for any issues on which the parties could not reach agreement due to the pending depositions. While Defendants agreed to review some of their privilege claims based on Plaintiffs' challenges, they have not provided any additional information to support their privilege claims or informed Plaintiffs of any change in their position as of the time of this filing.

## II. DEFENDANTS HAVE WITHHELD MATERIAL BASED ON AN IMPROPER INVOCATION OF ATTORNEY-CLIENT PRIVILEGE.

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citations omitted). Courts "construe the privilege narrowly because it renders relevant information

undiscoverable." *Id*. (citations omitted); *Pritchard v. Cty. of Erie (In re Cty. of Erie)*, 473 F.3d 413, 419 (2d Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity."). And, here, because the Defendants are the party asserting the privilege, they "bear[ ] the burden of establishing its essential elements." *Mejia*, 655 F.3d at 132 (citations omitted). Defendants have not met that burden for the categories of documents Plaintiffs challenge here.

### A. Defendants have failed to establish that communications between attorneys at USDS and non-attorney employees at GSA are entitled to privilege protections.

Defendants have improperly asserted attorney-client privilege over communications for which there is no attorney-client relationship—specifically, emails between USDS lawyers and employees at an entirely different agency, GSA. *See* Exhibit 1 (relevant documents highlighted in orange). For purposes of the attorney-client privilege, "in the government agency context, the agency may be considered the 'client' and the agency lawyer the 'attorney.'" *Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*, 2020 WL 762835, at *4 (M.D. Pa. Feb. 14, 2020)" (citing *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 618 (D.C. Cir. 1997))); *see also Fox News Network, LLC v. United States Dep't of the Treasury*, 739 F. Supp. 2d 515, 562-63 (S.D.N.Y. 2010) (noting that the Federal Reserve Bank of New York was a "third party" to the Treasury Department's attorney-client relationship with Treasury Department attorneys);.

Defendants' privilege assertions violate that basic rule. Defendants have redacted and/or withheld approximately 60 communications between Nate Cavanaugh and/or Justin Fox, on the one hand, and Justin Aimonetti and/or Ashley Boizelle, on the other, identifying Aimonetti and Boizelle as the attorneys "contributing to privilege." But Aimonetti and Boizelle were lawyers in the general counsel's office for the U.S. DOGE Service, which is a standalone agency and legal

entity within the Executive Office of the President. Executive Order 14158 § 3(a) ("the United States DOGE Service (USDS) . . . shall be established in the Executive Office of the President"). The Government has been insistent that Justin Fox and Nate Cavanaugh, who are not attorneys, were *not* employees of the U.S. DOGE Service. Instead, according to the Government, Fox and Cavanaugh were employees of an entirely separate agency, GSA. For instance, the government wrote in response to requests for admission that it "denies that Nate Cavanaugh and Justin Fox were employed by the U.S. DOGE Service." ECF No. 158-11, and at 7. The Government even emphasized to the Supreme Court the legal distinction between the U.S. DOGE Service and employees like Cavanaugh and Fox who were on the "DOGE teams" at other agencies, writing that the U.S. DOGE Service is a "body within the Executive Office of the President," [a]nd it is distinct from the Agency DOGE Teams, which comprise personnel within each relevant agency who report to agency heads." Gov't Appl. to Stay at 5, *In re DOGE Serv.*, No. 24A1122 (May 21, 2025). Defendants cannot have it both ways; they cannot insist that Cavanaugh and Fox were non-U.S. DOGE Service employees but at the same time argue that Cavanaugh and Fox were clients of in-house counsel for the U.S. DOGE Service. Therefore, Defendants cannot establish an attorney-client relationship between the USDS attorneys and Fox/Cavanaugh, which is a prerequisite to the privilege attaching.

Nor could the Defendants establish that the communications are privileged under the common-interest doctrine. That doctrine requires that there first be a privileged communication between an attorney and their own client that is then shared with a separate attorney for a separate client who is pursuing a common legal enterprise, and there is zero evidence Fox and Cavanaugh first communicated with GSA attorneys and that this was then shared with USDS attorneys in a common legal enterprise. *See Lively v. Skyline Agency LLC*, 2025 WL 2532796, at *6 (S.D.N.Y.

Sept. 3, 2025) (rejecting the common-interest doctrine applies "[w]here the communication was not originally made between client and counsel for the purpose of obtaining legal advice, it is not privileged in the first place"); *see also id*. at 6 ("The common-interest privilege comes into play when those clients share otherwise privileged information in order to coordinate their legal activities." (citations omitted)); *Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, 2023 WL 315072, at *8 (S.D.N.Y. Jan. 19, 2023) (doctrine extends to situations "'where a joint defense effort or strategy has been decided upon and undertaken by the parties and *their respective counsel*'" (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (emphasis added))); *Wayne Land & Mineral Grp., LLC*, 2020 U.S. Dist. LEXIS 26360, at *4 (finding common-interest claim "unavailing" when non-attorneys from different government agencies shared information without involvement from agency attorneys because "the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information . . . . Sharing the communication directly with a member of the community may destroy the privilege" (quoting *Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commcn's Corp.)*, 493 F.3d 345, 364 (3d Cir. 2007))). The common-interest doctrine does not allow an attorney at one agency to create attorney-client relationships with every other agency in the government merely by giving legal advice to random non-lawyer employees of the other agencies.

As such, no privilege exists for the communications between the U.S. DOGE Service and Fox and Cavanaugh, and the communications must be produced. So too must the 5 documents identified on the privilege log for whom the custodian is identified as Fox or Cavanaugh, Ex. 1, Rows 95-98, 337, but the attorney contributing to privilege is Aimonetti; again, Fox and

Cavanaugh were not, according to the Government's claim that they were employees of GSA, Aimonetti's clients and anything he provided them is not privileged.

The same goes for two additional communications Defendants have withheld that are just between Fox, NEH Chair McDonald, and another NEH employee, Richard Brundage, claiming Justin Aimonetti as the attorney "contributing to privilege." *Id*. at Rows 145, 146. Putting aside that Aimonetti is not even a party to these communications, McDonald and Brundage are employees of yet a different agency, NEH. They were not Justin Aimonetti's clients.

In the alternative, even if there were an attorney-client relationship between USDS attorneys and employees of GSA or NEH, Defendants still have failed to establish a sufficient basis for asserting privilege. Advice from government lawyers about "risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances" are not privileged legal advice. *County of Erie*, 473 F.3d at 420; *see also Fox News*, 739 F. Supp. 2d at 560 ("It bears emphasis that the attorney-client privilege protects only legal advice, not economic, business, or policy advice."). Defendants accordingly must establish that the "primary purpose" of each communication they seek to withhold was to render legal advice. *County of Erie*, 473 F.3d at 420.

Here, the descriptions Defendants provided to support their claims of privilege just as well describe communications about unprotected topics—like politics, policy, expense and appearance—as they do communications about legal advice. Sometimes Defendants describe the basis for privilege in their log as merely seeking or obtaining "advice from counsel," *see, e.g.*, Ex. 1, Row 142, and sometimes Defendants describe it as mere "discussions with counsel," *see, e.g.*, *id*. Row 156. Sometimes Defendants refer to the same conversation as containing both "advice & discussions," suggesting "discussions" are something different from obtaining or rendering "advice." *See e.g.*, *id*., Row 152. The descriptions Defendants provide of the topics about which

advice was given or discussions held are vague as well and do not clearly identify a legal issue. These vague topics include, among others, "response to termination notice inquiries," *e.g.*, *id.*, Row 161, and "grant termination process," *e.g., id.*, Row 128. Having failed to establish that the primary purpose of these communications was for obtaining or giving legal advice, Defendants have failed to carry their burden to establish privilege even if there were an attorney-client relationship between USDS attorneys and GSA or NEH employees. *See also United States v. Constr. Prods. Research*, 73 F.3d 464, 473-74 (2d Cir. 1996) (vague descriptions of basis for privilege insufficient to support application of privilege).

**B. Defendants have failed to establish that communications and documents with no associated attorney are entitled to privilege protections.**

Defendants have improperly asserted attorney-client privilege over communications and documents where no attorney at all is identified as being associated with it. Specifically, Defendants have redacted or withheld approximately 48 documents (highlighted in yellow in Exhibit 1) for which they have claimed attorney-client privilege but have not identified any attorney in the "Attorney(s) Contributing to Privilege" column of their log. Needless to say, communications that are not between attorneys and their clients for the purpose of obtaining or providing legal advice are not subject to the attorney-client privilege. *Mejia*, 655 F.3d at 132. Having failed to identify any attorney involvement, Defendants cannot establish the privilege applies to these withheld and redacted communications and documents. *In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." (citation omitted)); *Wultz v. Bank of China*, 979 F. Supp. 2d 479, 497

(S.D.N.Y. 2013) (finding failure to identify attorney conferring privilege rendered privilege log insufficient to support privilege claim).

As an example of Defendants' failure to support their privilege claims on this front, one email Defendants redacted entirely is between Defendant Justin Fox and the head of NEH's Grant Management Office, Richard Brundage, with the subject line, "Termination inquiry responses." *See* Exhibit 2. Neither of these individuals are attorneys. And, while Defendants support their claim of privilege by describing the document in their privilege log as "[s]eeking advice from counsel re: response to termination notice inquiries," this communication is between two non-attorneys at different agencies, and Defendants do not identify any attorneys from any agency from whom this communication is seeking advice. *See* Exhibit 1, Row 179 (column titled, "Attorney(s) Contributing to Privilege" is blank).[3]

Even if the communications for which the Government has not identified any attorney were later forwarded to an attorney who had an attorney-client relationship with the individuals on the communications, this would not save the Defendants on their privilege claim. In the context of corporate counsel rendering advice to a corporate entity, the privilege's extension to employee communications without the company's attorney only reaches those communications undertaken "at the direction of counsel, to gather information to aid counsel in providing legal services." *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006) (advising courts should be "wary that the involvement of the attorney is not being used simply to shield corporate communications from disclosure."); *see also Mejia*, 655 F.3d at 132 ("the privilege protects communications

[3] In addition, given that Brundage is an employee of NEH and Fox an employee of GSA (according to the Government), this document could not be privileged because the two are not even clients of the same attorney or coordinating through agency attorneys in a common legal enterprise, as outlined in Part II.A above.

between a client and an attorney, not communications that prove important to an attorney's legal advice to a client" (citations omitted)) (finding no privilege attached to attorney's communications with third party even if helpful to rendering legal advice to client); *Au New Haven, LLC v. YKK Corp.*, 2016 WL 6820383, at *6 (S.D.N.Y. Nov. 18, 2016) (finding communications between non-lawyer employees not privileged where, "[t]o the degree that legal issues are referenced, the document only states, to a broad audience of non-attorneys, that the relevant department has the intention of requesting legal advice in the future"); *id*. (privilege does not apply to non-attorney employee communications "simply because an attorney recommended [a document's] preparation if it contains merely business-related or technical communications between corporate employees"); *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 322-23 (S.D.N.Y. 2020) (email discussions between non-attorney employees not protected merely because later forwarded to attorney). Defendants have not even claimed, much less established, that the withheld communications with no identified attorney involvement were undertaken at the direction of counsel, much less counsel with the required attorney-client relationship with all non-attorney parties, *see supra* Part II.A. They must be produced.

Similarly, even if the communications for which Defendants have not identified any attorney involvement reflected the distribution of some attorney's actual legal advice (not unprotected policy or political advice) to non-attorneys, Defendants still would need to show these individuals had an attorney-client relationship with the attorney rendering the advice. As outlined above, if the attorney giving advice was a USDS attorney, the distribution of his advice to individuals at GSA and/or NEH is not privileged.

## III. DEFENDANTS HAVE WITHHELD MATERIAL BASED ON AN IMPROPER INVOCATION OF DELIBERATIVE PROCESS PRIVILEGE.

Defendants have also improperly invoked the "deliberative process privilege" to withhold

dozens of documents or portions of documents. Specifically, they invoked the deliberative process privilege in conjunction with attorney-client privilege for 43 documents and invoked the deliberative process privilege alone in withholding 18 additional documents. These assertions of the deliberative process privilege are categorically improper: the privilege does not apply where, as here, the government's decision-making process itself is the subject of the litigation. In the January 20 meet and confer, Defendants agreed to review their deliberative process designations. In an attempt to reach agreement before filing this motion, Plaintiffs agreed only to move to compel production of the most urgent records as Defendants undertake that review. Accordingly, while Plaintiffs believe the deliberative process privilege is improperly invoked over any records in this case, for purposes of this motion, Plaintiffs move to compel production only of records over which Defendants have invoked the privilege that also are being challenged in Part II[4] and a document with the filename "NEH_Terminated_Award_Guidance_DRAFT.docx," identified by Control No. 38473.1 in Defendants' log.

The deliberative process privilege is "a sub-species of work product privilege that covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (internal quotation marks and citation omitted). The privilege's purpose is to "preserv[e] and encourag[e] candid discussion between officials" as they work toward a final decision. *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005). Accordingly, "in cases where the governmental decisionmaking process is collateral to the plaintiff's suit," the privilege protects pre-decisional governmental documents from

[4] These are identified by their Control Nos. as noted in the privilege log in paragraph 4 of the Plaintiffs' Proposed Order.

disclosure. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency* (*In re Subpoena*), 145 F.3d 1422, 1424 (D.C. Cir. 1998).

However, "when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery and the privilege evaporates." *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 14 (E.D.N.Y. 2014) (internal quotation marks and citation omitted); *see also Ciaramella v. Zucker*, 2021 WL 4219501, at *4 (S.D.N.Y. Sept. 16, 2021) ("[T]his action is one in which the decision-making process itself is the subject of the litigation, such that the Privilege evaporates." (internal quotation marks and citation omitted)); *New York v. Salazar*, 701 F. Supp. 2d 224, 237 & n.9 (N.D.N.Y. 2010) ("Where, as here, the challenge is to the decision-making process, there is no balancing test the court must apply before requiring disclosure."); *Child. First Found., Inc. v. Martinez*, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (collecting cases). As the D.C. Circuit has likewise held, "[i]f the plaintiff's cause of action is directed at the government's intent, … it makes no sense to permit the government to use the privilege as a shield." *In re Subpoena*, 145 F.3d at 1424.

Here, as in the above-cited cases, the government's "decision-making process itself is the subject of the litigation, such that the Privilege evaporates." *Ciaramella*, 2021 WL 4219501, at *4. Specifically, Plaintiffs allege that Defendants engaged in impermissible viewpoint discrimination in deciding to terminate the grants of the named plaintiffs and the members of the proposed class. The critical issue for resolving that claim is the government's intent and decision-making process—*i.e.* why it targeted certain grants for termination. Because Plaintiffs are "challenging the process by which Defendants made their decision, claiming that it was viewpoint-based censorship, … the deliberative process privilege … must now disappear." *Child. First Found.*, 2007 WL 4344915, at *7; *accord, e.g.*, *In re Subpoena Duces Tecum*, 145 F.3d at 1424 ("It seems

rather obvious to us that the privilege has no place in a … constitutional claim for discrimination."); *Dorce v. City of N.Y.*, 2023 WL 7545345, at *5 (S.D.N.Y. Nov. 14, 2023) ("[B]ecause the question whether Defendants possessed 'discriminatory motivation' … is central to at least one of Plaintiffs' claims, 'the agency deliberations are central to the case' and the Privilege is inapplicable.").

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and enter the attached proposed order requiring Defendants to produce the material they have improperly withheld under invalid claims of privilege.

Dated: January 21, 2026

Respectfully submitted,

By: /s/ *Jamie Crooks*

Jamie Crooks (pro hac vice)
Michael Lieberman (pro hac vice)
Amanda R. Vaughn (pro hac vice)
Yinka Onayemi
FAIRMARK PARTNERS, LLP
400 7th Street, NW, Suite 304
Washington, DC 20004
Tel: 619.507.4182
jamie@fairmarklaw.com
michael@fairmarklaw.com
amanda@fairmarklaw.com
yinka@fairmarklaw.com

*Attorneys for Plaintiffs and the Proposed Classes*