UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN COUNCIL OF LEARNED
SOCIETIES, et al.,

                    Plaintiffs,

        v.

ADAM WOLFSON, in his official
capacity as Acting Chairman of the National
Endowment for the Humanities, et al.,

                    Defendants.

25 Civ. 3657 (CM)

Consolidated with No. 25 Civ. 3923 (CM)


**DEFENDANTS' MEMORANDUM IN OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SPOLIATION SANCTIONS**

JAY CLAYTON
United States Attorney for the
Southern District of New York
By:    MARY ELLEN BRENNAN
       RACHAEL L. DOUD
       JONAKI M. SINGH
       Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2652/2699/2785
maryellen.brennan@usdoj.gov
rachael.doud@usdoj.gov
jonaki.singh@usdoj.gov

**TABLE OF CONTENTS**

**PAGE**

BACKGROUND ..................................................................................................................2

LEGAL STANDARD..........................................................................................................4

ARGUMENT .......................................................................................................................8

     I.     PLAINTIFFS HAVE NOT SHOWN THAT DEFENDANTS FAILED TO PRESERVE RELEVANT EVIDENCE ................................................................8

     II.    PLAINTIFFS DID NOT SUFFER PREJUDICE AS A RESULT OF ANY LOSS OF INFORMATION.......................................................................................9

     III.   PLAINTIFFS HAVE NOT MET THEIR BURDEN TO SHOW THAT DEFENDANTS ACTED WITH THE REQUISITE INTENT.............................12

     IV.   PLAINTIFFS' REQUESTED SANCTIONS ARE NOT WARRANTED ...........14

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(s)**

*Alter v. Rocky Point Sch. Dist.*,
    No. 13 Civ. 1100 (JS) (AKT), 2014 WL 4966119 (E.D.N.Y. Sept. 30, 2014) ................. 6

*Benny v. City of Long Beach*, 20-CV-1908 (KAM) (ST), 2022 WL 2967810
    (E.D.N.Y. July 27, 2022) ......................................................................................... 16

*Berenson v. Biden*,
    791 F. Supp. 3d 398 (S.D.N.Y. 2025) ...................................................................... 1

*Byrd v. Maricopa County Sheriff's Dep't*,
    629 F.3d 1135 (9th Cir. 2011) ................................................................................ 17

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001) .................................................................................. 8, 9

*CAT3, LLC v. Black Lineage, Inc.*,
    164 F. Supp. 3d 488 (S.D.N.Y. 2016) .................................................................. 17

*Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*,
    337 F.R.D. 47 (S.D.N.Y. 2020) ........................................................................... 17

*Chen v. Thai Greenleaf Restaurant Corp.*,
    2025 WL 1519145 (E.D.N.Y. May 28, 2025) ...................................................... 17

*Dilworth v. Goldberg*,
    3 F. Supp. 3d 198 (S.D.N.Y. 2014) ....................................................................... 6

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*,
    No. 17 Civ. 4576 (GHW) (BCM), 2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021)......... 5, 7

*Europe v. Equinox Holdings, Inc.*,
    592 F. Supp. 3d 167 (S.D.N.Y. 2022) .................................................................. 10

*Farella v. City of New York*,
    Nos. 05 Civ. 5711 & 05 Civ. 8264 (NRB), 2007 WL 193867
    (S.D.N.Y. Jan. 25, 2007)........................................................................................ 4

*Fujitsu Ltd. v. Fed. Express Corp.*,
    247 F.3d 423 (2d Cir. 2001).............................................................................. 5, 8

*Hebbe v. Pliler*,
    No. 2:00–cv–306–EFB P, 2013 WL 4496599 (E.D. Cal. Aug. 21, 2013) ...................... 17

*Hoffer v. Tellone*,
    128 F.4th 433 (2d Cir. 2025) .......................................................................... 12

*Johnson v. L'Oreal USA*,
    No. 18 Civ. 9786 (LGS), 2020 WL 5530022 (S.D.N.Y. Sept. 15, 2020) ......................... 7

*Karsch v. Blink Health Ltd.*,
    No. 17 Civ. 3880 (VM) (BCM), 2019 WL 2708125 (S.D.N.Y. June 20, 2019) ....... *passim*

*Khatabi v. Bonura*,
    No. 10 Civ. 1168 (ER), 2017 WL 10621191 (S.D.N.Y. Apr. 21, 2017) ........................... 6

*Klipsch Grp. Inc. v. Big Box Store Ltd.*,
    No. 12 Civ. 6283 (VSB)(MHD), 2014 WL 904595 (S.D.N.Y. Mar. 4, 2014) ................ 16

*Klipsch Grp., Inc. v. ePro E-Com. Ltd.*,
    880 F.3d 620 (2d Cir. 2018) ............................................................................ 8

*Kronisch v. United States*,
    150 F.3d 112, 126 (2d Cir. 1998) ...................................................................... 7

*Leidig v. Buzzfeed, Inc.*,
    No. 16 Civ. 542 (VM) (GWG), 2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) ................ 7

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    No. 15 Civ. 9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ............. 5, 8

*Man Zhang v. City of New York*,
    No. 17 Civ. 5415 (JFK) (OTW), 2019 WL 3936767 (S.D.N.Y. Aug. 20, 2019) .............. 6

*Moody v. CSX Transp., Inc.*,
    271 F. Supp. 3d 410 (W.D.N.Y. 2017) .................................................. 6, 10, 12

*Morrison v. Millenium Hotels*,
    No. 18-CV-06811(VEC), 2021 WL 1534293 (S.D.N.Y. Apr. 19, 2021) ........................ 15

*New York State Nat. Org. for Women v. Cuomo*,
    No. 93 CIV. 7146 (RLC) (JCF), 1998 WL 395320 (S.D.N.Y. July 14, 1998) ................ 15

*Nurmagomedov v. Legionfarm, Inc.*,
    No. 23 CIV. 6683 (NRB), 2024 WL 4979235 (S.D.N.Y. Dec. 4, 2024) ........................ 11

*Oakley v. MSG Networks, Inc.*,
    792 F. Supp. 3d 377 (S.D.N.Y. 2025) ............................................ 13, 14, 17

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
   271 F.R.D. 429 (S.D.N.Y. 2010) ................................................................. 7

*Port Auth. Police Asian Jade Soc. of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey*,
   601 F. Supp. 2d 566 (S.D.N.Y. 2009) ........................................................ 14

*R.F.M.A.S., Inc. v. So*,
   271 F.R.D. 13 (S.D.N.Y. 2010) .................................................................. 6

*Richard Green (Fine Paintings) v. McClendon*,
   262 F.R.D. 284 (S.D.N.Y. 2009) ............................................................... 7

*Treppel v. Biovail Corp.*,
   249 F.R.D. 111 (S.D.N.Y. 2008) ............................................................... 7

*Ungar v. City of New York*,
   329 F.R.D. 8 (E.D.N.Y. 2018) ................................................................... 6

*West v. Goodyear Tire & Rubber Co.*,
   167 F. 3d 776 (2d Cir. 1999) .................................................................... 4

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ....................................................... 5, 7, 8

## RULES

Fed. R. Civ. P. 25(d) ............................................................................................. 1

Fed. R. Civ. P. 37(e)(1) ........................................................................................ 5

Fed. R. Civ. P. 37(e)(2) ..................................................................................... 1, 5

Federal Rule of Civil Procedure 37(e) ................................................... *passim*

Defendants Adam Wolfson, in his Official Capacity as Acting Chairman of the National Endowment for the Humanities; National Endowment for the Humanities ("NEH"); United States DOGE Service; Amy Gleason, in her Official Capacity as Acting Administrator of the United States DOGE Service; Nate Cavanaugh, in his official capacity as an employee of the General Services Administration; and Justin Fox, in his official capacity as an employee of the General Services Administration ("Defendants")[1] respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for Spoliation Sanctions Against Defendants (Dkt. No. 221).

Plaintiffs seek spoliation sanctions pursuant to Federal Rule of Civil Procedure 37(e). Plaintiffs are not entitled to such sanctions, however, unless they can establish that relevant electronically stored information that should have been preserved is lost, Plaintiffs have suffered prejudice from the loss of the information, and Defendants acted with the intent to deprive Plaintiffs of the information's use in this litigation.  Fed. R. Civ. P. 37(e)(2).  Plaintiffs cannot satisfy that standard.  First, while Michael McDonald, Justin Fox, and Nate Cavanaugh used Signal, which has an auto-delete feature, to communicate for certain limited purposes, they did not use that application to engage in substantive discussions about the grant terminations at issue in this case.  Additionally, while Michael McDonald exchanged some text messages regarding NEH and had a general practice of deleting those messages, the text messages of the relevant individuals

---

[1] When a public officer who is a party in an official capacity ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party.  Fed. R. Civ. P. 25(d).  Michael McDonald is no longer the Acting Chairman of the National Endowment for the Humanities, and Adam Wolfson, who now holds that position, is automatically substituted as a defendant in his place.  Additionally, Nate Cavanaugh and Justin Fox no longer occupy the positions in which they were sued in their official capacities, and there is no successor to those positions.  Accordingly, the United States should be substituted for these officials as a defendant. *See Berenson v. Biden*, 791 F. Supp. 3d 398, 405 (S.D.N.Y. 2025) (substituting United States for any defendant sued in their official capacity who no longer held position but for whom no successor had been named).

with whom he communicated were preserved and searched and, thus, no relevant materials were lost.

Further, Defendants were transparent about the fact that they were terminating grants based on their perceived association with diversity, equity and inclusion ("DEI")—the conduct Plaintiffs allege violated the First Amendment and, now, the Equal Protection Clause. There is simply no reason to believe that, even if Signal communications that were auto-deleted had some relevance, they would advance Plaintiffs claims at all. Accordingly, Plaintiffs have suffered no prejudice as a result of the loss of any such messages.

Plaintiffs also have not shown that McDonald, Fox, or Cavanaugh acted with the intent to deprive Plaintiffs of the use of information in this litigation. There is no evidence that, by using Signal for limited purposes with at best tangential relevance to the claims in this litigation, these individuals intended to conceal evidence from discovery.

Even if the Court were to find that Plaintiffs have satisfied the requirements above, the sanctions Plaintiffs seek still would not be warranted. The facts of this case are essentially undisputed, and Plaintiffs have identified no evidentiary gaps that need to be filled. Instead, Plaintiffs improperly ask the Court to draw inferences that would essentially amount to a decision in their favor on ultimate legal issues in the case. Finally, Plaintiffs are not entitled to attorneys' fees or costs for their spoliation motion.

## BACKGROUND

Plaintiffs seek spoliation sanctions based on the use of Signal by Cavanaugh, Fox, and McDonald, and McDonald's regular practice of deleting his personal text messages. Plaintiffs' characterization of the likely contents of these materials is inconsistent with the evidence.

Cavanaugh's deposition testimony reflects that he used Signal for certain limited purposes.

He testified that he used it to send Steve Davis, a DOGE official, updates on savings at various agencies and that he did so after forwarding these updates from his GSA email account, Doud Decl. Ex. A, Cavanaugh Dep. Tr., 80:13-81:10—meaning that copies of these documents were preserved in his emails.  Indeed, copies of these documents were produced in this case.  *See, e.g.*, *id.* 81:14-23 (discussing one such document, which was marked as an exhibit at Cavanaugh's deposition).  Cavanaugh testified that he did not otherwise have substantive discussions with Mr. Davis about NEH via Signal.  *Id.* 303:23-306:11.  He also testified that he did not consult with anyone other than Justin Fox, Michael McDonald, and others from NEH in determining which grants to recommend for termination at NEH, *id.* 307:10-15, and that he did not communicate with McDonald via Signal, *id.* 96:9-13.

Justin Fox testified that, while he used Signal to correspond with Cavanaugh and other DOGE personnel, "Signal was used to coordinate where we were" and "[t]he real work about each of these agencies was done over e-mail or our GSA phones."  Doud Decl. Ex. B, Fox Dep. Tr., 101:18-25.  He also testified that he did not have any substantive discussions about grant terminations at NEH via Signal.  *Id.* 325:4-12.

Michael McDonald primarily used Signal to communicate with members of the National Humanities Council, who were not involved in the grant terminations.  Doud Decl. Ex. C, McDonald Dep. Tr., 81:15-24, 152:23-153:12; February 27, 2026, Declaration of Michael McDonald ("McDonald Decl.") ¶¶ 14-15.  McDonald also exchanged a limited number of Signal messages with Lisette Voyatzis and Adam Wolfson, who served as NEH's Acting General Counsel and Assistant Chair of Programs, respectively, when the grants were terminated.  McDonald Dep. Tr. 349:19-350:25; McDonald Decl. ¶ 16.  At his deposition he did not recall any specific work-related messages with them via Signal, and noted that he could "only speculate" and it was "likely"

that he exchanged such messages because he has "a predilection for sending [a]long articles that I see that relate to our activities."  McDonald Dep. Tr. 350:8-14.  McDonald does not recall exchanging any Signal messages with Cavanaugh or Fox or having any substantive discussions regarding grant terminations via Signal.  McDonald Declaration ¶¶ 17-18.

McDonald had a general practice of deleting his text messages that long preceded the grant terminations at issue in this case.  McDonald Dep. Tr. 82:12-83:4; McDonald Decl. ¶ 7.  While McDonald exchanged some text messages with Voyatzis and Wolfson, their text messages were reviewed for purposes of this case, as were the text messages of all NEH custodians, and any responsive, non-privileged messages were produced.  McDonald Decl. ¶ 10.

## LEGAL STANDARD

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F. 3d 776, 779 (2d Cir. 1999).  For spoliation "sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence actually existed and was destroyed."  *Farella v. City of New York*, Nos. 05 Civ 5711 & 05 Civ. 8264 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007).

Plaintiffs seek spoliation sanctions pursuant to Federal Rule of Civil Procedure 37(e), which provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."  Rule 37(e) further provides that the court, "only upon finding that the party acted with the intent to deprive another party of the information's use in the

4

litigation may," among other things, "presume that the lost information was unfavorable to the

party." Fed. R. Civ. P. 37(e)(2).

Rule 37(e) thus requires the following three-part analysis:

The first is to decide if the rule applies at all – that is, if a party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.' Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been 'prejudice to another party from loss of the information,' in which case the Court 'may order measures no greater than necessary to cure the prejudice.' Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider – regardless of prejudice to any other party – is whether the destroying party 'acted with the intent to deprive another party of the information's use in the litigation,' in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17 Civ. 4576 (GHW) (BCM), 2021 WL 1191527,

at *4-6 (S.D.N.Y. Mar. 30, 2021).

As to the first step, "[t]he obligation to preserve evidence arises when the party has notice

that the evidence is relevant to litigation or when a party should have known that the evidence may

be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir.

2001). "While a litigant is under no duty to keep or retain every document in its possession[,] . . .

it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action,

is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be

requested during discovery and/or is the subject of a pending discovery request." *Zubulake v. UBS*

*Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (citation omitted).

As to the second step, sanctions under Rule 37(e)(1) "may only be imposed [on] a finding

of prejudice to the moving party[.]" *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15 Civ.

9363 (ALC) (DF), 2018 WL 1512055, at *7 (S.D.N.Y. Mar. 12, 2018). "Proof of relevance does

not necessarily equal proof of prejudice." *Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880 (VM)

(BCM), 2019 WL 2708125, at *20 (S.D.N.Y. June 20, 2019) (citation omitted). The moving party

must come forward with "plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017) (internal citations omitted). "Where the discovery violation involves spoliation or withholding of evidence, the absence of prejudice can be shown by demonstrating, for example, that the other parties were able to obtain the same evidence from another source." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 25 (S.D.N.Y. 2010). Emails sent to or from a custodian are not "permanently lost or unrecoverable" if they are replaceable through other custodians. *Karsch*, 2019 WL 2708125, at *17 n.21.

Further, "speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence." *Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 202 (S.D.N.Y. 2014). Rather, the parties must:

> set forth, with . . . specificity, the materials which would have been helpful in prosecuting [their] claims. Relevance cannot be established solely on the basis of conjecture. Nor can a finding of relevance be grounded solely on the basis that some evidence in the custody of key witnesses no longer exists. [Each movant] has the burden of articulating what that evidence is with some degree of factual detail.

*Alter v. Rocky Point Sch. Dist.*, No. 13 Civ. 1100 (JS) (AKT), 2014 WL 4966119, at *12 (E.D.N.Y. Sept. 30, 2014). Similarly, the moving party must show that the lost information "was not only probative, but that it would affirmatively support the movant's claim." *Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018) (internal citations omitted); *Man Zhang v. City of New York*, No. 17 Civ. 5415 (JFK) (OTW), 2019 WL 3936767, at *6 (S.D.N.Y. Aug. 20, 2019) (requiring moving party to "'adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed . . . evidence would have been' favorable to its case") (quoting *Khatabi v. Bonura*, No. 10 Civ. 1168 (ER), 2017 WL 10621191, at *7 (S.D.N.Y. Apr. 21, 2017)). In short, "sanctions are not warranted unless there is proof that some information of significance has actually been lost." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 431 (S.D.N.Y. 2010).

As to the third step of the analysis, the intent standard for imposing sanctions under Rule 37(e)(2) "is both stringent and specific." *Doubleline Cap.*, 2021 WL 1191527, at *8. Rule 37(e)(2) contemplates "not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Leidig v. Buzzfeed, Inc.*, No. 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017); *see also Doubleline Cap.*, 2021 WL 1191527, at *8 (The moving party bears the burden of showing "that the spoliating party acted with the intent to deprive, not merely the intent to destroy."); *Johnson v. L'Oreal USA*, No. 18 Civ. 9786 (LGS), 2020 WL 5530022, at *4 (S.D.N.Y. Sept. 15, 2020) (denying request for adverse inference in absence of "evidentiary basis for Plaintiff's allegations that [the defendant] acted with an intent to deprive Plaintiff of relevant ESI in this litigation").

Where a party establishes entitlement to spoliation sanctions, a court may decide that an adverse inference instruction is appropriate. Such an instruction permits the jury to make "an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake*, 220 F.R.D. at 216 (citation omitted). The adverse inference is meant to restore a prejudiced party to the "position [it] would have been in absent the wrongful destruction of evidence by the opposing party." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). But, an adverse inference instruction is "an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008). "[W]ithout some proof that the [spoliating party]'s actions created an unfair evidentiary imbalance, an adverse inference is not appropriate." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 291 (S.D.N.Y. 2009).

Finally, in addition to any other sanctions imposed under Rule 37(e), "a court has the discretion to award attorneys' fees and costs to the moving party, to the extent reasonable to

address any prejudice caused by the spoliation." *Lokai Holdings*, 2018 WL 1512055, at *9. As the Second Circuit has explained, "a party that disregards its [discovery] obligations may create a reasonable suspicion that further investigation is warranted, and thereby imposes costs on its adversary that would never have been incurred had the party complied with its obligations in the first instance[,]" and an award of monetary sanctions compensates the adversary "for costs it should not have had to bear." *Klipsch Grp., Inc. v. ePro E-Com. Ltd.*, 880 F.3d 620, 634 (2d Cir. 2018).

## ARGUMENT

### I.    PLAINTIFFS HAVE NOT SHOWN THAT DEFENDANTS FAILED TO PRESERVE RELEVANT EVIDENCE

The obligation to preserve evidence arises only "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd.*, 247 F.3d at 436. "[A] litigant is under no duty to keep or retain every document in its possession." *Zubulake*, 220 F.R.D. at 217.

While Cavanaugh, Fox, and McDonald each engaged in some communications via Signal that were not preserved, there is no indication that they failed to preserve any messages they should have known would be relevant to future anticipated litigation. Specifically, while these individuals appear to have anticipated some types of legal challenges to the grant terminations at issue in this case, the messages they exchanged via Signal were at most peripherally related to grant terminations.[2]  *See* Cavanaugh Dep. Tr. 303:23-306:11, 307:10-15;  Fox Dep. Tr. 101:18-25,

---

[2] Plaintiffs argue that Defendants also had an obligation to preserve records under the Federal Records Act. Plaintiffs' Memorandum of Law in Support of Motion for Spoliation Sanctions Against Defendants, Dkt. No. 221 ("Br") at 7. However, the case on which they rely, *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001), preceded Rule 37(e). The committee notes to the 2015 amendments to Rule 37(e) note that, "[a]lthough the rule focuses on the common-law obligation to preserve in the anticipation or conduct of litigation, courts may sometimes consider whether there was an independent requirement that the lost information be

325:4-12; McDonald Dep. Tr. 81:15-24, 152:23-153:12, 350:8-14.  Further, at least some of the

materials that were not preserved via Signal were available from other sources.  *See* Cavanaugh

Dep. Tr. 80:13-81:23 (discussing update documents that Cavanaugh sent to Steve Davis by Signal

but that he also emailed from his GSA email account); McDonald Dep. Tr. 351:21-352:4

(describing limited text messages with Wolfson and Voyatzis, whose text messages were preserved

and reviewed).  *See* Fed. R. Civ. P. 37(e) (court action potentially appropriate "[i]f electronically

stored information that should have been preserved in the anticipation or conduct of litigation is

lost because a party failed to take reasonable steps to preserve it, *and it cannot be restored or*

*replaced through additional discovery*" (emphasis added)).

Accordingly, Plaintiffs have not made threshold showing that relevant materials were

destroyed.

## II.    PLAINTIFFS DID NOT SUFFER PREJUDICE AS A RESULT OF ANY LOSS OF INFORMATION

Even if messages that should have been preserved were lost and could not be replaced, no

relief is warranted because Plaintiffs suffered no prejudice as a result of the loss of any such

materials.  First, even if relevant materials were lost—which it does not appear they were—

---

preserved," but caution that "[t]he court should be sensitive . . . to the fact that such independent
preservation requirements may be addressed to a wide variety of concerns unrelated to the current
litigation" and "[t]he fact that a party had an independent obligation to preserve information does
not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party
failed to observe some other preservation obligation does not itself prove that its efforts to preserve
were not reasonable with respect to a particular case."  Fed. R. Civ. P. 37(e), Advisory Com. notes
on 2015 amendments.  Plaintiffs have not presented evidence that Cavanaugh, Fox, and McDonald
were aware of any obligation to preserve the Signal messages under the Federal Records Act.  *See*
McDonald Dep. Tr. 352:12-20 (testifying that he knew of the Federal Records Act but was not
aware of any obligation under that Act to forward text messages to an official account).  Further,
the connection between general record retention obligations Defendants may have had pursuant to
the Federal Records Act and this case is far more attenuated than that at issue in *Byrnie*, where the
court held that "where . . . a party has violated an EEOC record-retention regulation, a violation of
that regulation can amount to a breach of duty necessary to justify a spoliation inference in an
employment discrimination action."  *Byrnie*, 243 F.3d at 109.

"[p]roof of relevance does not necessarily equal proof of prejudice." *Karsch*, 2019 WL 2708125, at *20 (citation omitted). Further, the moving party must come forward with "plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Moody*, 271 F. Supp. 3d at 430. Plaintiffs have failed to do so.

In an effort to show prejudice, Plaintiffs point to an email produced in this case and assert that "there is no reason to doubt" that the Signal messages contained similar materials. Br. at 9-10. Contrary to Plaintiffs' assertion, however, there is significant reason to doubt that Defendants' Signal messages contained anything similar. The produced document is an April 1, 2025, email from McDonald to Fox where, according to Plaintiffs, "McDonald made clear that his 'recommendation' was not to terminate certain grants that NEH staff had identified as having no 'DEI' component." Br. at 12 (citing Jacobson Decl. Ex. 5). McDonald did not communicate with Fox via Signal, however, and did not communicate with anyone via Signal about which grants to terminate. McDonald Declaration ¶¶ 17-18. Accordingly, Plaintiffs' assertion that the lost Signal messages likely contained similar materials is not only unsupported but inconsistent with the evidence about what the Signal messages contained. In this circumstance, Plaintiffs' "suggestion" as to "what [the] evidence might have been," *Moody*, 271 F. Supp. 3d at 430, is not plausible and thus cannot be credited. *Compare Moody*, 271 F. Supp. 3d at 430 (plaintiff showed prejudice where lost data "would have conclusively determined" key factual issue); *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (finding that plaintiff in employment discrimination case was prejudiced by defendant's failure to preserve employees' work schedules for weeks leading up to plaintiff's termination because they "would assist Plaintiff in evaluating whether similarly situated coworkers were as late on as many days as Plaintiff in the month of September 2019").

10

Plaintiffs also point to a text message between McDonald and Wolfson discussing a news article and assert that "there is every reason to believe that, had they not been deleted, Defendants would have produced other text and Signal messages like this one corroborating Plaintiffs' core contentions in this case." Br. at 10. The text message is one from Wolfson to McDonald in which Wolfson expresses his personal views concerning a news article. Wolfson did not have authority to terminate grants—and Plaintiffs do not allege that he terminated grants. So it is unclear what core contention Plaintiffs contend the message corroborates. At any rate, to the extent Plaintiffs suggest that Signal communications would reflect that grants were terminated based on their perceived affiliation with DEI—which there is no indication they would—Plaintiffs would not be prejudiced by the loss of such materials because Defendants have never disputed that. *See, e.g.*, Dkt. No. 201.

Further, this case is not, as Plaintiffs suggest, similar to *Nurmagomedov v. Legionfarm, Inc.*, No. 23 CIV. 6683 (NRB), 2024 WL 4979235, at *5 (S.D.N.Y. Dec. 4, 2024). In *Nurmagomedov*, the court found prejudice where plaintiff and his manager deleted all of their internal WhatsApp communications concerning their relationship with defendant Legionfarm, and "existing evidence demonstrate[d] that WhatsApp was a *main channel* for plaintiff, his manager, and Legionfarm executives to discuss matters relevant to the Agreement" at issue. *Id.* at *2 (emphasis added); *see also id.* at *5. Here, by contrast, there is no indication that any substantive discussions regarding grant terminations took place via Signal, much less that Signal was a "main channel" for such discussions.

Ultimately, as the Advisory Committee Note on the 2015 Amendments to Rule 37(e) explains, an "evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Plaintiffs have not lost access to any

11

information that would be important to their ability to prove their claims, both because there is no indication that the deleted messages were relevant to those claims and because the key facts in this case are undisputed.  Indeed, Plaintiffs have consistently argued that the record contains "stark and unmistakable" evidence of viewpoint-based discrimination.  Dkt. No. 158 at 5-6; *see also id.* at 4-5 (contending that the communications in the administrative record support Plaintiffs' *ultra vires* claims); Transcript of Feb. 2, 2026, Case Management Conference, at 6:22-24 (referring to "smoking gun evidence that was produced" relevant to equal protection claim).  Defendants do not dispute that NEH grants were terminated based on their perceived relation to DEI—indeed, grants were explicitly identified for termination on that basis pursuant to an Executive Order.  *See, e.g.*, NEH_AR_000001,     NEH_AR_000005,     NEH_AR_000007,     NEH_AR_000010, NEH_AR_000013.  There can be no prejudice to Plaintiffs where there is no real dispute as to the basis for the grant terminations at issue.  *Compare Karsch*, 2019 WL 2708125, at *20 (finding prejudice where lost communications, had they been preserved, "could have resolved one of the more significant factual disputes between the parties"); *Moody*, 271 F. Supp. 3d at 430 (plaintiff showed prejudice where lost data "would have conclusively determined" key factual issue).

## III.   PLAINTIFFS HAVE NOT MET THEIR BURDEN TO SHOW THAT DEFENDANTS ACTED WITH THE REQUISITE INTENT

Plaintiffs also have not shown that Defendants intended to "deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e); *see Hoffer v. Tellone*, 128 F.4th 433, 440 (2d Cir. 2025).

While Plaintiffs claim that, as NEH's former General Counsel, McDonald "certainly would have known" that the Federal Records Act required him to preserve the communications at issue, Br. at 11, his deposition testimony reflects that, while he was generally familiar with the Federal Records Act, he was not aware of an obligation to preserve his personal text messages.  *See*

12

McDonald Dep. Tr. 352:12-353:2.  Plaintiffs also suggest that McDonald's intent can be inferred from the fact that he engaged in certain communications via Signal because he wanted them to be "protected."  Br. at 11 (citing McDonald Dep. Tr. 368:13-19).  But as McDonald has stated, he does not recall ever engaging in substantive discussions about grant terminations by Signal, McDonald Decl. ¶ 18, so he could not have been attempting to hide such communications. Moreover, Plaintiffs have argued that the administrative record and the documents produced in discovery contain email communications involving McDonald that prove their First Amendment and *ultra vires* claims, *see supra* Part II, undermining any contention that McDonald sought to conceal his communications relevant to these issues by using Signal.

For their parts, both Cavanaugh and Fox testified that they did not personally elect to use Signal and only used the platform for certain types of communications because other DOGE-affiliated personnel had chosen to communicate that way.  Cavanaugh Dep. Tr. 249:15-24; Fox Dep. Tr. 32:10-20, 101:18-25.  They also would not have reasonably anticipated that the types of communications they had via Signal would be considered relevant in this litigation because the communications were, at most, minimally related to NEH, much less the grant terminations. Accordingly, contrary to Plaintiffs' claim, the loss of the Signal messages can be credibly explained as "not involving bad faith," which is part of the inquiry the court applied in *Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377 (S.D.N.Y. 2025), that Plaintiffs suggest the Court undertake here.  *See* Br. at 12.  In *Oakley*, the court found that the plaintiff acted with the intent to deprive the defendant of relevant text messages, where the plaintiff's proffered explanation for the loss of the messages was "simply not credible" and the plaintiff made "repeated misrepresentations regarding his texting habits and phone trade-ins."  *Id.* at 391-92.  The court also found it significant

that the messages were lost after the plaintiff filed suit, when he clearly had an obligation to preserve his text messages. *Id.* at 384, 392.  None of those factors are present here.

## IV.    PLAINTIFFS' REQUESTED SANCTIONS ARE NOT WARRANTED

Plaintiffs request a number of remedies, none of which would be warranted even if the Court found that the requirements for imposing spoliation sanctions pursuant to Rule 37(e) are met.

First, Plaintiffs argue that "the Court should consider the evidence of Defendants' spoliation in evaluating the parties' forthcoming cross-motions for summary judgment and, if necessary, at trial"—a measure intended to "'ensure that the finder of fact will have the full context for [any] evidentiary imbalance.'"  Br. at 13 (quoting *Oakley*, 792 F. Supp. 3d at 389).  Here, however, there is no evidentiary imbalance, much less one the Signal messages would be expected to remedy.  Indeed, as Defendants have explained, *see, e.g.*, Dkt. No, 201 at 2, the facts are essentially undisputed.  Plaintiffs have not pointed to any area in which they appear to be missing relevant evidence.

Second, Plaintiffs asked the Court to "draw an adverse inference that Defendants made admissions in their Signal messages that would have corroborated Plaintiffs' core allegations in this case." Br. at 13.  Because the facts of the case are essentially undisputed, however, no adverse inference that the Signal messages would contain additional evidence establishing those facts would be warranted.  *See, e.g.*, *Port Auth. Police Asian Jade Soc. of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey*, 601 F. Supp. 2d 566, 570-71 (S.D.N.Y. 2009) (where plaintiffs "possess[ed] ample evidence to permit the jury to draw conclusions" on the issues on which they sought adverse inferences, an adverse inference instruction was not warranted); *Morrison v. Millenium Hotels*, No. 18-CV-06811(VEC), 2021 WL 1534293, at *11 (S.D.N.Y.

Apr. 19, 2021) (adverse inference sanction not appropriate where "none of the topics identified by Plaintiff is in material dispute"); *New York State Nat. Org. for Women v. Cuomo*, No. 93 CIV. 7146 (RLC) (JCF), 1998 WL 395320, at *3 (S.D.N.Y. July 14, 1998) (plaintiffs not entitled to spoliation sanctions where they "obtained substantial evidence" concerning the relevant issue and "failed to demonstrate prejudice to their case or bad faith by the defendants" with respect to the allegedly spoliated evidence).

Plaintiffs also provide three specific "example[s]" of inferences they contend the Court should draw. These examples merely serve to highlight the fact that adverse inferences are not warranted here. First, Plaintiffs suggest the Court should infer that "Defendants Cavanaugh and Fox discussed on Signal how they would be the ones terminating NEH grants—including by selecting which grants would be terminated and by executing the terminations themselves." Br. at 13. Such an inference would be inconsistent with Fox and Cavanaugh's testimony, which reflects that they did not engage in substantive discussions concerning termination of NEH grants via Signal. Cavanaugh Dep. Tr. 96:9-13, 303:23-306:11, 307:10-15; Fox Dep. Tr. 101:18-25, 325:4-12. At any rate, the evidence shows, and Defendants have never disputed, that Fox and Cavanaugh participated in identifying grants for termination, that McDonald approved the terminations, and that Fox and Cavanaugh then sent out the termination notices. *See* NEH_AR_000005, NEH_AR_000010, NEH_AR_000013, NEH_AR_000021. It is unclear what exactly Plaintiffs hope to gain from their proposed inference. To the extent they are asking the Court to infer that McDonald did not play a role in the grant terminations, however, such an inference would be contradicted by the evidence and thus improper. *See Klipsch Grp. Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (VSB) (MHD), 2014 WL 904595, at *1, 6 (S.D.N.Y. Mar. 4, 2014), *aff'd* 880 F. 3d 620 (2d Cir. 2018) (where plaintiff moved for spoliation sanctions based on defendants' failure to

preserve sales transaction documents and sought adverse inference that defendants had engaged in "far more substantial sales than they have heretofore disclosed," rejecting plaintiff's proposed inference as inconsistent with documents in discovery that "are consistent in reflecting a very small quantity of sales"); *see also generally Benny v. City of Long Beach*, 20-CV-1908 (KAM) (ST), 2022 WL 2967810, at *10-11 (E.D.N.Y. July 27, 2022) (declining to apply an adverse inference that missing video footage would have been favorable to the plaintiff, in part because "both parties agree that there are . . . 'true and accurate' video recordings of" the arrest at issue and the court did not need to "resolve the parties' conflicting assertions that are inconsistent with the video evidence").

Plaintiffs' remaining proposed adverse inferences are somewhat ambiguous but appear designed to improperly direct a finding as to ultimate legal issues in the case. Specifically, Plaintiffs request that the Court infer that "Defendants discussed on Signal that they were selecting which grants to terminate based on their perceived viewpoints and associations" and that "Defendants discussed how they were selecting many grants for termination based on race, nationality, sex, gender, or sexual orientation." Br. at 13. It is undisputed that Defendants identified grants for termination based on their perceived affiliation with DEI. However, it is highly unlikely that Defendants used language mirroring the elements of a First Amendment or equal protection claim in their Signal messages, if that is what Plaintiffs are asking the Court to infer. If, instead, Plaintiffs are asking the Court to infer that the contents of the Signal messages demonstrate that Defendants violated the First Amendment and Equal Protection Clause, such inferences going to the ultimate legal issues in the case are improper. *See Chen v. Thai Greenleaf Restaurant Corp.*, 2025 WL 1519145, at *9 (E.D.N.Y. May 28, 2025) (refusing to give requested adverse inference instruction where it "effectively addresse[d] the ultimate issue of successor

liability"); *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1147 (9th Cir. 2011) (court may decline to use party's requested wording for an adverse inference instruction when, for example, the suggested language would impermissibly direct the jury to reach a conclusion about a matter of disputed fact); *Hebbe v. Pliler*, No. 2:00–cv–306–EFB P, 2013 WL 4496599, at *5 (E.D. Cal. Aug. 21, 2013) (declining to give jury plaintiff's proposed adverse inference instruction where "it would effectively resolve in plaintiff's favor the ultimate disputed issue of whether defendants' policies were reasonably related to legitimate penological interests").

Finally, Plaintiffs ask the Court to order Defendants to pay Plaintiffs' attorneys' fees and costs in connection with pursuing their spoliation motion.  Br. at 14.  Rule 37(e)(1) "authorizes an award of attorneys' fees and costs to the moving party to the extent reasonably necessary to address any prejudice caused by the spoliation."  *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 68 (S.D.N.Y. 2020).  The purpose of this remedy is to "ameliorate[] the economic prejudice imposed . . . and also serve[] as a deterrent to future spoliation."  *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016).  Accordingly, courts have awarded fees and costs where, for example, a party had to expend resources pursuing discovery related to the loss of evidence.  *See, e.g.*, *Oakley*, 792 F. Supp. 3d at 389-90.

Here, Plaintiffs have not suffered any economic prejudice as the result of the loss of the Signal messages and an award of fees is not warranted.  Plaintiffs do not appear to contend that they incurred any discovery expenses related to the Signal messages, and instead seek attorneys' fees and costs only for the spoliation motion itself.  Plaintiffs do not specify how much those fees and costs are, but presumably the costs incurred in drafting a less than fourteen-page brief were modest.  At any rate, however, Plaintiffs' motion was unnecessary.  As explained above, there is no indication that the Signal messages contained information material to Plaintiffs' claims, and

indeed Plaintiffs have not identified any area in which relevant evidence appears to be lacking. Ultimately, moreover, Plaintiffs simply ask the Court—which is itself the factfinder on the summary judgment motions—to draw inferences that are either unnecessary given the essentially undisputed facts in the case or improperly go to the ultimate issues.  Plaintiffs should not be awarded costs and fees for this unnecessary motion.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for spoliation sanctions.

Dated: February 27, 2026                    Respectfully submitted,

                                            JAY CLAYTON
                                            United States Attorney for the
                                            Southern District of New York

                                    By:  */s/ Rachael Doud*
                                            MARY ELLEN BRENNAN
                                            RACHAEL L. DOUD
                                            JONAKI M. SINGH
                                            Assistant United States Attorneys
                                            86 Chambers St., 3rd Floor
                                            New York, New York 10007
                                            (212) 637-2699
                                            (212) 637-2652
                                            (212) 637-2785

                                            *Attorneys for Defendants*

18