**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

THE AUTHORS GUILD, WILLIAM
GOLDSTEIN, ELIZABETH KADETSKY,
VALERIE ORLANDO, KATALIN BALOG,
BENJAMIN HOLTZMAN, LEE JASPERSE,
and NICOLE JENKINS, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

        v.

NATIONAL ENDOWMENT FOR THE
HUMANITIES, et al.,

        Defendants.

Case No. 1:25-cv-03923

Consolidated with No. 1:25-cv-03657

**REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ...................................................................................................................................... 2

    I.      The Common Fund Doctrine Applies, and the Percentage-of-Recovery
           Method is Appropriate ......................................................................................... 2

    II.     A Common Fund Award Would Not Violate Federal Law .................................... 7

    III.    Plaintiffs Have Shown Irreparable Harm................................................................ 8

    IV.    The Balance of Equities and Public Interest Support Plaintiffs' Request ............. 9

CONCLUSION .................................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991) ....................................................................... 5, 6

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ......................................................... 9

*Fresno Cnty. Employees Ret. Ass'n v. Isaacson*,
   925 F.3d 63 (2d Cir. 2019) ..................................................................................... 9

*Gorgonzola v. McGettigan*,
   2017 WL 1449789 (W.D. Pa. Apr. 21, 2017) .................................................. 5, 6, 8

*Holodnak v. Avco Corp.*,
   381 F. Supp. 191 (D. Conn. 1974) .......................................................................... 8

*In re Black Farmers Discrimination Litig.*,
   953 F. Supp. 2d 82 (D.D.C. 2013) .................................................................. 3, 4, 6

*Jordan v. Fusari*,
   422 F. Supp. 1179 (D. Conn. 1975) ..................................................................... 6, 8

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 6

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ............................................................................................... 2

*Puerto Rico v. Heckler*,
   745 F.2d 709 (D.C. Cir. 1984) .................................................. 1, 2, 4, 5, 6, 7, 8

*Savoie v. Merchants Bank*,
   84 F.3d 52 (2d Cir. 1996) ....................................................................................... 8

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) ............................................................................................ 2, 4

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) .......................................................................... 3, 6, 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................................... 6

**Statutes**

28 U.S.C. § 2412(b) ...................................................................................................... 8

28 U.S.C. § 2412(d) ........................................................................................................ 8, 9

**Other Authorities**

Grace Vance,
*A judge ruled DOGE's arts cuts were unconstitutional*, KCRG (Jun. 19, 2026) ...................... 3

**Rules**

Federal Rule of Civil Procedure 23(h) ............................................................................ 10

**Treatises**

Federal Judicial Center,
*Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. ed. (2010) ........................ 7

*Principles of the Law of Aggregate Litigation*,
The American Law Institute, Mar 1, 2010, § 3.13 ..................................................... 7

**INTRODUCTION**

Until last month, the Government vociferously fought to prevent the Class from receiving *any* of the funding NEH previously had awarded them to further their humanities scholarship. Now, conceding it must reinstate grants worth more than $100 million because the Court ordered it to, the Government objects to compensating Class Counsel with any percentage of the value this litigation created for the Class because doing so would "deprive grantees of funding" and would "represent a 'significant departure' from NEH's stated budget justifications." Opp. to Pltfs.' Mot. for Preliminary Injunction, ECF No. 171 ("Opp.") at 2, 11.

The Court should not credit the Government's newfound concern for the Class's welfare or the NEH's statutory purpose. Regardless, the legal arguments the Government raises to oppose Plaintiffs' Motion, ECF No. 170 ("Mot."), fail. The Supreme Court, the Second Circuit, and courts around the country have long recognized that the percentage-of-recovery award Plaintiffs plan to request is appropriate in non-damages cases like this one, including in cases against the government and especially where (as here) the financial benefit the litigation generated for the Class is readily ascertainable. Awarding such fees does not violate the NEH statute, the purposes of which were vindicated by this litigation. *Puerto Rico v. Heckler*, 745 F.2d 709, 712 (D.C. Cir. 1984) (R.B. Ginsburg, J.) ("The litigation is what enabled [plaintiff] and other similarly situated jurisdictions to get the grant funds in the first place so that the money could be put to the enumerated uses. The authorized uses, in other words, sprang from, and would not have been possible without, [plaintiff's] investment in litigation."). And far from "disproportionately enrich[ing]" Class Counsel, Opp.15, the (at most) 15% fee Class Counsel plan to seek is at the low end of the percentages approved by this Court and others in common fund cases.

The case law supports Plaintiffs' request, as does the predominantly contingent nature of Class Counsel's representation, the novel and important legal questions that were litigated and

1

decided in the Class's favor, the public benefit this case generated by exposing DOGE's reckless behavior, and the hostility the Trump Administration has exhibited to lawyers that challenge it. The requested reservation of 15% of grant disbursements is a reasonable and necessary interim measure that will allow the Court to consider Plaintiffs' anticipated fee motion at the proper time.

## ARGUMENT

### I.    The Common Fund Doctrine Applies, and the Percentage-of-Recovery Method is Appropriate

The Government asserts that the common fund doctrine is unavailable because the granted relief did not award money damages. Opp.6-7. But the granting of money damages—which all agree were not awarded here—is not relevant to whether the common-fund doctrine applies: "[N]othing in [common fund] cases indicates that the suit must actually bring money into the court." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *see* Mot.9-10 (citing cases). The common-fund doctrine is an equitable doctrine, and "the formalities of the litigation … hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939); *see also Puerto Rico*, 745 F.2d at 711 (awarding fees in declaratory-relief challenge to government's refusal to disburse grant funding because the case "fits comfortably in the 'common fund' category").

Indeed, the Government concedes that courts apply the common fund doctrine to cases, like this one, "involving only non-monetary injunctive relief." Opp.7. It acknowledges the doctrine applies "when the litigation 'conferred a substantial benefit on the members of an ascertainable class and where it is possible to spread the costs proportionately among the members of the class.'" *Id.* (citation omitted). And nowhere in its opposition does the Government dispute that those conditions are satisfied here—nor could it, as the Court's summary judgment ruling unquestionably conferred a substantial benefit on the Class. *See* Exhs. 1–7 (declarations from each

2

named Plaintiff); *see also* Grace Vance, *A judge ruled DOGE's arts cuts were unconstitutional*, KCRG (Jun. 19, 2026), https://tinyurl.com/37rj8vuc ("I found myself with tears of joy because I feel like we're swinging back into the right direction.").

Instead, the Government tries to distinguish this case from the many injunctive-relief cases in which courts have awarded common-fund fees, Opp. 6-10, and argues that using the percentage-of-recovery method would be improper or unfair, *id.* at 14-18. Neither position has merit.

To begin, the Court should look askance at the Government's newfound concern for grantees' welfare: Having fought for a year to ensure grantees get 0% of their lawful entitlement, the Government's argument that it would be unfair if grantees now received (at least) 85% of it "rings particularly hollow here given the history of this litigation." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993) (awarding, over government's objection, a percentage-of-the-fund award and noting "HHS would have this Court ignore the fact that the government, left to its own devices, would have paid nothing to reimburse hospitals for their [statutorily covered] expenses. HHS would also have us ignore the lengths to which the Department has gone, through repeated litigation, to avoid its statutory obligations in this matter.").

In any event, applying the common-fund doctrine here is not "unprecedented" as the Government claims, Opp.10, but common, as the cases in Plaintiffs' opening brief reflect. This case is not different from those that came before, and the Government provides no reasonable basis to distinguish them. For example, in *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82 (D.D.C. 2013), class counsel's work established a non-judicial process through which class members could apply for money from a pool of appropriated government funds. *Id.* at 84-87. Even though counsel's work did not result in a damages award, it "benefitted the class by ensuring that a greater number of plaintiffs likely will prevail on their claims than otherwise … and that adequate

funding will exist to provide meaningful compensation to each successful plaintiff." *Id.* at 90. The Court applied the common-fund doctrine and awarded counsel a percentage of the appropriated funds amounting to over $90 million. *Id.* at 102; *see also Sprague*, 307 U.S. at 163 (applying common-fund doctrine where class counsel's efforts established lien for the benefit of the class).

The Government attempts to distinguish these two cases by claiming they "involved a reserve of funds that was either specifically set aside to compensate plaintiffs or would otherwise have been paid to plaintiffs from a defendant's funds." Opp.8. But that perfectly describes this case, which also involves a reserve of funds specifically set aside for grantees that would otherwise be paid to them—*i.e.*, awarded by NEH, escrowed by the Court at the preliminary injunction stage, and made available for the Class's benefit by the Court's permanent injunction. *See* Mot.10-11.

The Government's attempt to distinguish *Puerto Rico v. Heckler* fares just as badly. There, Puerto Rico obtained declaratory relief rejecting an HHS determination about grant eligibility. The D.C. Circuit (per then-Judge Ginsburg) held that the common-fund approach was appropriate, despite the absence of money damages, because the declaratory relief unlocked "a recovery not only for the complainant, but for a group of similarly situated others." 745 F.2d at 711. The court awarded Puerto Rico's counsel a percentage-of-recovery award, rejecting as "not reasonable" the government's argument that doing so would violate the relevant appropriation statute. *Id.* at 712. The Government argues *Puerto Rico* is distinguishable because "the relief granted in that case was the disbursement of a fixed grant amount, rather than the reinstatement of contracts," Opp.16—but practically speaking, this distinction doesn't matter: each individual Class member in this case is likewise entitled, by virtue of their now-reinstated grant, to a "fixed grant amount."[1]

---

[1] The Government further cites as purported distinctions that "this case involves individual grantees and academic institutions rather than U.S. territories," and that there were five non-named

Other cases are equally on point. In *Gorgonzola v. McGettigan*, 2017 WL 1449789 (W.D. Pa. Apr. 21, 2017), nurses at the Department of Veterans Affairs prevailed on their claim that the government unlawfully withheld their full annuity payments. *Id.* at \*1-\*2. The court acknowledged it lacked jurisdiction to award money damages, *id.* at \*12, and granted only injunctive relief requiring the government to notify class members of their right to request benefit recalculation, *id.* at \*5-\*11. Even though the litigation produced only a right to request funds and not money damages, the court authorized the same type of relief Plaintiffs seek here: it ordered a "30% holdback" of any increased annuity payments "pending determination … of whether Class Counsel is entitled to a common fund fee award." *Id.* at \*12. The court explained that "a holdback is both equitable and appropriate" because the injunctive relief would likely lead to "discrete individuals receiving discrete, individualized benefits." *Id.* at \*13. So too here.

An example from this District is *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991), where the court enjoined the government to recalculate Medicare reimbursements. The judgment did not award money damages or create a fund, but it unlocked the possibility of higher reimbursements for class members who "learn of [their] rights and make application for payments." *Id.* at 169. The government opposed a motion for common-fund fees, arguing that "no common fund has been created" and that the class members did "not have a presently ascertainable share in the total monetary recovery." *Id.* at 168. The court rejected that "rigid approach" as "unrealistic" and ordered that "a set percentage [] be deducted from each payment" for attorneys' fees, ultimately approving an 8.74 multiplier on class counsel's lodestar. *Id.* at 167 n.1, 168-69.

---

beneficiaries there instead of hundreds here. Opp.16. Plaintiffs submit that these "distinctions" are irrelevant to the instant legal question: whether this litigation "created a 'common fund' or conferred a common benefit" for others similarly situated. *Puerto Rico*, 745 F.2d at 711.

As these cases reflect, this case is squarely in line with the many prior instances in which common-fund fees were awarded to plaintiffs who obtained injunctive relief against the government.

The Government is also wrong that common-fund fees should be calculated using the lodestar method rather than the percentage-of-recovery method. Opp.16-18. *Black Farmers*, *Puerto Rico, Gorgonzola*, and *Cosgrove* all used the percentage method even though the only relief was injunctive or declaratory. And as noted in Plaintiffs' opening brief, "there is a strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (McMahon, J.); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (The percentage method "aligns the interests of the class and its counsel and provides a powerful incentive for [] efficient prosecution."); *Swedish Hosp.*, 1 F.3d at 1268-69 (rejecting lodestar approach in favor of percentage-of-recovery approach because "the monetary amount of the victory is often the true measure of success, and therefore it is most efficient that it influence the fee award"). Notably, moreover, the Government does not dispute that application of the *Goldberger* factors would support Plaintiffs' fee request for up to 15% of the recovery. *Compare* Mot.12-20 *with* Opp.18 n.4.

The lodestar cases the Government cites, Opp.17, do not support deviating from that consensus. Two of them challenged union election procedures rather than preserving access to funds, so there was no discrete pool of money from which to compensate the attorneys. And in the third case, *Jordan v. Fusari*, 422 F. Supp. 1179 (D. Conn. 1975), a case predating the Equal Access to Justice Act ("EAJA") (*see* Section II, *infra*), the court believed it was statutorily prohibited from ordering a common-fund award in the first place, *id.* at 1182, so it never reached the question of how to award fees under the doctrine. Finally, the Government accuses Plaintiffs of "selectively

6

quot[ing]" a treatise, claiming it endorses the lodestar method "in cases seeking solely injunctive or declaratory relief." Opp.17 (quoting *Principles of the Law of Aggregate Litigation* ("ALI *Principles*"), § 3.13). But the Government is the one mischaracterizing—the treatise says that the lodestar method should be used "in cases seeking solely ***nonmonetizable*** injunctive or declaratory relief." ALI *Principles*, § 3.13 cmt.b (emphasis added). Here, the value of the injunctive relief is calculable, and thus the percentage method appropriate. *Id.*; *see also* Fed. Judicial Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. ed., at 34-35 (2010) ("In some class actions involving injunctive relief, the injunctive relief can be assigned a monetary value.").[2]

## II.    A Common Fund Award Would Not Violate Federal Law

The Government argues that a common-fund award would "violate[] federal law" because NEH funds are appropriated to fund humanities scholarship and not litigation or attorneys' fees. Opp.10-14. Then-Judge Ginsburg pointedly rejected this precise argument in *Puerto Rico*: "This argument is not reasonable. The litigation is what enabled Puerto Rico and other similarly situated jurisdictions to get the grant funds in the first place so that the money could be put to the enumerated uses." 745 F.2d at 712. So too here: After the Mass Termination, NEH grantees had no funds to support their work, and it was only because of Plaintiffs' success in this litigation that grantees' entitlement to funding—and the NEH's statutory purpose—will be vindicated.

Indeed, as *Puerto Rico* pointed out, *id.* at 711-12, EAJA explicitly authorizes and waives sovereign immunity from common-fund awards unless another statute expressly prohibits them:

> *Unless expressly prohibited by statute*, a court may award reasonable fees and expenses of attorneys … to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.

---

[2] The Government's argument that Class Counsel would be "disproportionately enriched" by a percentage award, Opp.15, also ignores that Plaintiffs expressly carved out from their request, and will not seek fees on, any awards due to the *ACLS* Plaintiffs or their members. Those grants were restored through the efforts and important contributions of ACLS's counsel.

28 U.S.C. § 2412(b) (emphasis added). Tellingly, the Government never even acknowledges the "expressly prohibited" requirement, failing to address the plain text of its own waiver of sovereign immunity. It argues that attorneys' fees are not among the enumerated uses for grant funds, Opp.10-12, but *Puerto Rico* rejected that exact argument: "We reject the government's indiscriminate argument that, in the context of grants, if something is not expressly authorized, then inevitably it is expressly prohibited." 745 F.2d at 712. That same reasoning applies here.[3] And the cases the Government cites to support its claim of illegality are of no help. Opp.13 (citing *Jordan*, 422 F. Supp. 1179, and *Holodnak v. Avco Corp.*, 381 F. Supp. 191 (D. Conn. 1974)). Both predate EAJA and its directive that common-fund awards are authorized absent an express prohibition. The *Jordan* court, for example, did not ask whether fee awards were "expressly prohibited," instead treating as dispositive that they were not expressly authorized. 422 F. Supp. at 1182. Post-EAJA that is no longer the appropriate analysis. *Puerto Rico*, 745 F.2d at 712.

### III.    Plaintiffs Have Shown Irreparable Harm

Circuit precedent establishes irreparable harm in this context. *See* Mot.21 (discussing *Savoie v. Merchants Bank*, 84 F.3d 52, 58 (2d Cir. 1996)). Contrary to the Government's argument, Opp.18-19, the possibility of statutory EAJA fees under 28 U.S.C. § 2412(d) does not undermine *Savoie*'s rationale or justify foreclosing a common-fund award at this stage. *See Gorgonzola*, 2017 WL 1449789, at *14 (explaining that a "common fund holdback … is appropriate" even though "EAJA may also remain as an available avenue for Plaintiffs' counsel."). Common-fund awards

---

[3] The Government argues that "federal grant regulations" limit recipients to costs that are "'necessary,' 'reasonable,' and 'allocable' to the project." Opp.12. This is irrelevant because the EAJA authorizes common-fund awards "unless expressly prohibited *by statute*," 28 U.S.C. § 2412(b) (emphasis added), and regulations are not a statute. *Puerto Rico*, 745 F.2d at 712. The argument is also just wrong: this litigation was unquestionably necessary, reasonable, and allocable because without it, the grants would still be terminated.

and EAJA awards are neither interchangeable nor mutually exclusive, and "a common-fund fee may … exceed what would be a 'reasonable fee' in the fee-shifting context." *Fresno Cnty. Employees Ret. Ass'n v. Isaacson*, 925 F.3d 63, 70 (2d Cir. 2019). A common-fund award here is likely to exceed any award under 28 U.S.C. § 2412(d), as the latter is capped well below market rates and cannot serve the purposes of a common-fund award—to "approximate the reasonable fee that a competitive market would bear" and "encourage skilled counsel to represent those who seek redress for injury inflicted on an entire class." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *14, *17 (S.D.N.Y. Sept. 9, 2015) (McMahon, J.); *Swedish Hosp.*, 1 F.3d at 1270 (same). Thus, an injunction is necessary to prevent the harm that would result if grant funds were disbursed without a reservation for a potential common-fund award. *Savoie*, 84 F.3d at 58.

**IV.    The Balance of Equities and Public Interest Support Plaintiffs' Request**

The Government argues that reserving grant funds would harm the grantees, "who may lack the resources to complete their projects" if 15% of their grant payment were temporarily held in reserve. Opp.15. The Court should not credit the Government's *volte-face*. It was the Government that summarily and unconstitutionally terminated every Class member's grant, stripping hundreds of scholars and institutions of 100% of funding. It then fought reinstatement vociferously until it had a summary judgment order from this Court.[4] The Government now asks the Court to accept an alternative story: one in which grantees' scholarship is being threatened not by DOGE and the Government, but by Class Counsel and the named Plaintiffs who support a percentage-of-recovery award. That inversion strains credulity. If Plaintiffs' motion is granted,

---

[4] Indeed, the Government even sought to hinder the discovery process and engage in procedural dissimulation, as this Court noted on several occasions. *See, e.g.*, ECF 168 (No. 25-cv-3657) at 14 (Opinion Granting Pltfs.' Motion to Compel) ("[The Government's] position is untenable. An agency may not evade its obligation to compile the 'whole record' by declining to search repositories that its own evidence shows were central to the challenged action.").

Class members will soon gain access to 85% of the funding they had 0% of just a month ago. There is a reason every named plaintiff supports the proposed reservation of funds for a potential fee award; as one grantee put it, "without this lawsuit, and attorneys willing to bring it, I would have zero access to the remainder of my grant and access to zero percent of the related funding." Decl. of Dr. William Goldstein at ¶ 2; *see also* Exhs. 1–7.[5]

The Government notes that class members have not had an opportunity to object to the proposed reservation of 15% pending a future fee motion. Opp.8-9. But the Government acknowledges, *id.* at 9, and Plaintiffs welcome, the fact that class members will receive notice and an opportunity to object when Plaintiffs file their fee motion, as required by Rule 23(h). The Government cites no authority requiring notice or a right to object to an interim measure simply preserving funds for a future motion, and the Second Circuit's decision authorizing the holdback procedure mentions none. *See Savoie*, 84 F.3d at 52. Moreover, as the Government acknowledges, it can reserve the funds in a way that would eliminate any interim impact for most grantees—*i.e.*, by "delay[ing] the 15% reservation until issuing the grantees' final payment," which in most cases will not occur until after this Court rules on the fee motion. Opp.9. And as the Government likewise acknowledges, *id.*, Class Counsel has made clear in meet and confers that they are happy to work with the Government to ensure that the holdback procedure has a minimal effect on grantees.

## CONCLUSION

Plaintiffs respectfully request that the Court grant the motion.

---

[5] The Government suggests that Plaintiffs support a fee award only because it would allow them to bear less from their own grant funds. Opp.10. But as their declarations show, Exhs. 1–7, their support comes from their appreciation for the benefit this litigation created for the Class. The Court should not credit the Government's accusations that the named Plaintiffs have self-interested motivations—it was their willingness to bring this case, at a time when the Trump Administration was publicly attacking those who fought back against its worst abuses, that enabled the restoration of hundreds of grants and over $100 million in support for public humanities scholarship.

Dated: June 22, 2026

Respectfully submitted,

/s/ Jamie Crooks
Jamie Crooks
Michael Lieberman
Amanda R. Vaughn
Yinka Onayemi
FAIRMARK PARTNERS, LLP
400 7th Street NW, Suite 304
Washington, DC 20004
Telephone: (619) 507-4182
jamie@fairmarklaw.com
michael@fairmarklaw.com
amanda@fairmarklaw.com
yinka@fairmarklaw.com

*Attorneys for Plaintiffs and the Class*

11