**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE AUTHORS GUILD, WILLIAM GOLDSTEIN, ELIZABETH KADETSKY, VALERIE ORLANDO, KATALIN BALOG, BENJAMIN HOLTZMAN, LEE JASPERSE, and NICOLE JENKINS, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>NATIONAL ENDOWMENT FOR THE HUMANITIES, et al.,<br><br>      Defendants. | Case No. 1:25-cv-03923<br><br>Consolidated with No. 1:25-cv-03657 |

**DECLARATION OF JAMIE CROOKS**

I, JAMIE CROOKS, declare as follows:

1. I am an attorney duly licensed to practice law before this Court in this matter. I am a member of the Bar of the District of Columbia, and I have been admitted to this Court *pro hac vice*. I make this declaration on my own personal knowledge, and if called as a witness to testify, I could and would testify competently to the following facts.

2. I am the Founding and Managing Partner of Fairmark Partners, LLP ("the Firm" or "Fairmark"), which serves as counsel for Plaintiffs and the certified Class in the above-captioned action. I submit this declaration in response to the Court's August 4, 2026 Order. ECF 178.

3. The information in this declaration regarding the Firm's time is taken from time reports prepared and/or maintained by the Firm in the ordinary course of business. I am the partner who oversaw and/or conducted the day-to-day activities in the litigation, and I reviewed these

reports in connection with the preparation of Class Counsel's filing of the preliminary injunction motion seeking a "holdback" of a percentage of grant money preserved for Class Members' benefit by the Court's summary judgment order, *see* ECF 170 ("Holdback Motion"), as well as for this declaration. The purpose of this review was to confirm both the accuracy of the entries as well as the necessity for, and reasonableness of, the time committed to the litigation.

4.     As a result of this review, I made reductions to time in the exercise of billing judgment. Based on this review and the adjustments made, I believe that the time reflected in the Firm's lodestar calculation was necessary for the effective and efficient prosecution and resolution of the litigation.

5.     The hourly rates used here are each timekeeper's regular billing rates. They are the same hourly rates charged to paying clients, and used and court-approved in other class action litigation. The Firm's rates are set based on periodic analysis of rates charged by firms performing comparable work both on the plaintiff and defense side, as well as publicly available resources regarding reasonable attorneys' fees. Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, legal professionals, analysts, etc.) have different rates based on a variety of factors, including years of practice, years at the Firm, years in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, relevant credentials, and the rates of similarly experienced peers.

6.     As of today, August 5, 2026, the number of hours spent on the litigation by my Firm is 1,814 hours. The lodestar amount based on the Firm's current rates is $1,502,764.75. Of this time, 169 hours and $149,518.50 in lodestar have been spent on issues related to the Holdback Motion briefing and other work related solely to attorneys' fees, including preparation of this declaration.

7.      As noted in my declaration of May 29, 2026, The Authors Guild, a named Plaintiff, agreed to pay, and did pay, Fairmark $150,000 for its work on this case. ECF 170-2 at ¶ 6. The hours and lodestar amounts in Paragraph 6 include all work performed to date, including the work covered by that payment. However, Fairmark's engagement agreement with The Authors Guild obligates Fairmark to repay The Authors Guild the $150,000 if the Firm applies for and receives attorneys' fees after a successful resolution of this case. Thus, the amounts given in Paragraph 6 are not reduced by the $150,000 previously paid by The Authors Guild, but that amount would be repaid to The Authors Guild out of any fee award the Court awards to Fairmark.

8.      The hours and lodestar amounts in Paragraph 6 include work from five attorneys. The bulk of the work on this case was performed by four attorneys. The fifth attorney (an associate) has only performed 56.8 hours (*i.e.*, $39,760 in lodestar) of work on this case, conducting an independent analysis of issues and risks related to the forthcoming appeal. *See* ECF 174. The hours and lodestar amounts in Paragraph 6 also include work from two paralegals who worked for Fairmark in non-overlapping periods—*i.e.*, only one paralegal was assigned to this case at any given time. No other timekeepers are included.

9.      The Court's Order asks "whether the calculation includes time billed by multiple lawyers for performing the same tasks, and, if so, the amount attributable to that time." During the review I described above, I removed from the calculation in Paragraph 6 billed time that reflects two or more Fairmark employees working on any single discrete task, with two exceptions. First, during the course of this litigation Fairmark regularly held calls with our clients, the *ACLS* counsel team, the Government, members of the proposed Class, other grantees, or subject matter (*e.g.*, First Amendment) experts at which multiple Fairmark attorneys were present to discuss litigation strategy or discovery issues; entries for such meetings for attorneys beyond the first attorney

account for 46.8 hours and $38,385.50 of lodestar in the calculation in Paragraph 6. Second, for the four depositions at which a Fairmark attorney took testimony in this case, I staffed both a first and second chair; the second chairs' time for these depositions account for 23.6 hours and $20,637.50 of lodestar in the calculation in Paragraph 6. (Other attorneys also attended these depositions remotely, but I have removed those entries from the calculation in Paragraph 6.)

10.    The hours and lodestar amounts in Paragraph 6 do not include the substantial hours we expect to spend working on the case during appellate proceedings. Based on past experience, I anticipate that Fairmark attorneys will spend anywhere from 150 to 600 hours or more on appellate proceedings, depending on the nature of the Government's arguments, whether the Second Circuit hears oral argument, whether either party seeks a writ of *certiorari* from the Supreme Court, and whether the Supreme Court grants such review. It is also possible, though unlikely, that additional proceedings on remand (apart from those related to fees) may eventually be necessary. While these possible future hours are not included in the hour and lodestar amounts in Paragraph 6, they were relevant to determining the percentage of grant disbursements that Plaintiffs requested be held in reserve to ensure the availability of sufficient funds to satisfy any award of fees and expenses at the end of the case.

11.    Separately, at the time it filed the Holdback Motion, Fairmark anticipated the possibility of needing to spend substantial attorney time, including potential motions practice, to ensure the Government's compliance with the Court's summary judgment order. Fairmark attorneys have spent some time conferring with the Government since that order was issued, as well as communicating with Class Members regarding what to expect going forward; such time is included in the figures given in Paragraph 6. Given the Government's apparent compliance with the summary judgment order, we are hopeful substantial attorney time and/or motions practice will

4

not be necessary, but we nonetheless anticipate spending further time monitoring the Government's compliance and communicating with the Class about related issues.

12.    Through discussions with the Department of Justice, Plaintiffs were able to ascertain the amount of funds associated with Class Members' grants that were preserved as a result of this Court's May 7 Order. As of July 21, 2026, the amount totaled $86,767,406. This figure does not include grants awarded to members of the plaintiff organizations in the consolidated *ACLS* case, as such grants are not part of the Class. The figure also does not include grants that had already been reinstated voluntarily by the Government or under authority separate from the Court's May 7 Order (*e.g.*, the preliminary injunction issued in *Thakur v. Trump*, No. 3:25-cv-04737 (N.D. Cal.)).

13.    We have learned from members of the Class that some portion of the $86,767,406 has been disbursed to Class Members, including potentially significant amounts on August 1, 2026. For instance, one Class Member reported this weekend that he received half of his grant award on August 1 (what in the normal course would have been two separate, quarterly payments), and another reported that she received her final grant payment on the same day. Other Class Members have reported that they have received notifications that payments are forthcoming but have not received actual payments, and still others have reported they have not yet heard anything about their grants being reinstated. Fairmark thus does not currently know the amount of funds associated with Class Members' grants that remain scheduled for disbursement, but that number is less than (and potentially substantially less than) $86,767,406.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 5, 2026, at New York, New York.

By:    */s/ Jamie Crooks*
Jamie Crooks
Managing Partner
FAIRMARK PARTNERS, LLP
400 7th Street, NW, Ste. 304
Washington, DC 20004
jamie@fairmarklaw.com
Tel: 619.507.4182